(No. 14542.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANGELO STATHUS, Plaintiff in Error.

*Opinion filed June 21, 1922.*

1. CRIMINAL LAW—*Supreme Court cannot decide conflicting testimony.* Where the testimony regarding the material facts in issue is directly in conflict it is the peculiar province of the jury to determine on which side of the controversy the truth lies, and in such case the Supreme Court will not substitute its opinion for that of the jury unless it is satisfied, from a consideration of all the testimony, that there is a reasonable doubt of guilt.

2. SAME—*when motion for a new trial will be denied.* Where the defense in a criminal case is based on the theory that the prosecution is a frame-up to put the defendant out of business, a motion for a new trial, after a verdict of guilty, is properly denied where the affidavit in support of the motion merely corroborates the charges as to the frame-up and where the delay in procuring the additional evidence is not satisfactorily explained.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding.

HAROLD J. BANDY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, JOSEPH P. STREUBER, State's Attorney, and JAMES B. SEARCY, for the People.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Edward Wilson, who lives at Brighton, went to Madison on May 1, 1921, and there called on John Venice, an acquaintance who was tending bar at a saloon owned by Sam Stathus and Nick Poulus. When Wilson left home he intended to go to St. Louis to buy a second-hand automobile and was carrying a large sum of money for that purpose. Immediately after he arrived at the saloon in Madison he began drinking moonshine whisky. By five

o'clock he was drunk and the saloon-keepers took him up-
stairs and put him to bed.  Venice took $250 from Wilson's
pocket and kept it for him until the following morning,
when he gave it back to him.  After the money was re-
turned to Wilson he went to another saloon in Madison,
conducted by plaintiff in error, Angelo Stathus, and his
partners, Gus Cheros and James Sharos.  Here Wilson
again imbibed too freely of moonshine and was soon help-
less.  Venice testified that some time after Wilson left the
saloon where the former worked he followed him to the
second saloon; that just as he entered the door Wilson
was paying for a drink of whisky with a twenty-dollar bill;
that shortly after this Cheros started the electric piano by
dropping a nickel in the slot and began dancing with Wil-
son; that Angelo Stathus took Wilson's pocket-book while
Cheros danced with Wilson; that there was a large amount
of money in the pocket-book, and that he (Venice) pro-
tested to Stathus, but the latter kept the money. Sharos
corroborated Venice in every detail with respect to the taking
of the pocket-book.  Wilson spent the night in a room over
the saloon, and the following morning, finding himself with-
out funds, he returned to Venice and borrowed five dollars
with which to buy a ticket home.  July 23, 1921, an in-
dictment was returned by the grand jury of Madison county
charging Angelo Stathus and his brother, Sam Stathus,
with robbery of Edward Wilson.  The State entered a
*nolle prosequi* as to Sam, and Angelo was convicted of
the larceny of $235 from the person of Wilson.  This writ
of error is prosecuted to review the judgment entered on
that verdict.

The principal contention of plaintiff in error is that the
evidence does not establish his guilt beyond a reasonable
doubt.  It is contended that the conviction is the result of
a story framed up by John Venice and James Sharos to
get even with the Stathus brothers.  No complaint was
made to the police at the time of this alleged robbery and

no complaint of any kind was ever made by Wilson. After Venice had been discharged by his employers and after Sharos had had trouble with his partners and had severed his relations with them, Wilson was brought by Venice to the State's attorney and Venice told his story. About all Wilson knows about the affair is that he left home with money, that he was drunk for two days in Madison and that he returned home without money. Venice and Sharos are corroborated by Truman Willer, who is a grain-car inspector, living in East St. Louis. He testified that Wilson came into the saloon on the morning of May 2 singing and calling for a drink; that he received the drink and several more and that later he saw him dancing with one of the proprietors; that while he was dancing the witness saw plaintiff in error put his hand in Wilson's pocket and take from him his pocket-book, and that he made no protest and made no report to the police. These four witnesses are the only witnesses for the prosecution. All of them are keepers or patrons of illicit liquor dens, and the testimony of such people is always subject to grave suspicion.

Plaintiff in error testified that he did not remember whether Edward Wilson had ever visited his saloon, but denied that his partner, Cheros, danced with him, or that he himself took any money from Wilson; that Sharos had made threats to drive him and his partner, Cheros, out of business and to take the place for himself, and that Sharos first had them arrested for selling intoxicating liquor and thereafter had them indicted for this offense. Cheros testified to the same effect. Harry Brody, a merchant of Madison, testified that plaintiff in error bore the reputation of being an honest and law-abiding citizen.

The foregoing is all of the material and relevant testimony in the record. As we have said, the testimony of these dive-keepers and their patrons is subject to grave suspicion, and it is not possible for us to tell from the printed abstract of their testimony who is telling the truth. For

that reason the law has intrusted to the jury the duty of determining the weight and the credit to be given the testimony of the several witnesses. The jury had the witnesses before them and could judge their intelligence, credibility and manner of testifying far better than this court. Where the testimony regarding the material facts in issue is directly in conflict and irreconcilable, and its conclusion in such case of necessity depends largely upon the credit to be given the opposing witnesses, it is the peculiar province of the jury to determine on which side of the controversy the truth lies. In such case this court has no right to interpose by substituting its own opinion when the jury have honestly and according to their best light performed this duty, unless this court is satisfied, from a consideration of all the testimony, that there is a reasonable doubt of the guilt of the accused. (*Gainey* v. *People*, 97 Ill. 270; *People* v. *Deluce*, 237 id. 541.) The trial judge who saw and heard the witnesses has approved this verdict, and we see no reason for setting it aside.

With the motion for a new trial plaintiff in error filed the affidavit of Anthony Maggos, in which he states that he is engaged in conducting a restaurant in Edwardsville; that November 3, 1921, John Venice came to his place of business and requested him to act as interpreter for Venice, who was to testify as a witness in this case in the circuit court; that he told Venice that he did not need an interpreter because he could speak the English language; that Venice replied that he intended to act like a "greenhorn" in court and wanted it to appear that he could not speak the English language; that he agreed to act as interpreter; that Venice told him the story he expected to narrate on the witness stand; that he told Venice he did not believe the story was true; that Venice told him that he and James Sharos had determined to get rid of Angelo Stathus and that they had decided to tell this story, which would be strong enough to accomplish their purpose; that he has no

interest whatever in this proceeding, and that he did not inform plaintiff in error of the facts herein contained until after the conclusion of the trial and the jury's verdict. This story is rather remarkable, and his delay in reporting it to plaintiff in error tends to cast suspicion upon it. For this reason, and for the reason that the testimony, if produced on another trial, would not bring anything new into the case but would merely corroborate the charges of plaintiff in error and Cheros that this prosecution is a frame-up, the motion for a new trial was properly denied.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*