(No. 15623.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK JONES, Plaintiff in Error.

*Opinion filed December 19, 1923.*

1. CRIMINAL LAW—*jury must determine weight and credit of testimony.* The law has conferred on the jury the right and power to determine the weight and credit to be given the testimony of the witnesses, and the mere fact that defendant's evidence is in conflict with that of the People is not sufficient to authorize a court of review to reverse a judgment of conviction.

2. SAME—*when, only, will judgment of conviction be reversed on evidence.* The Supreme Court will be warranted in reversing a judgment of conviction only where the evidence is of such a character that the court is convinced the jury disregarded the rule that guilt must be proved beyond a reasonable doubt or that the jury acted unreasonably in giving credit to the People's testimony and not to the defendant's.

3. SAME—*new trial will not be allowed for newly discovered evidence unless defendant has been diligent.* To justify granting a new trial on account of newly discovered evidence it must be shown that diligence was exercised to discover and procure the evidence and that the evidence is not merely cumulative to that given at the trial; and where nearly a year has elapsed from the time of the indictment until the defendant's conviction, the mere fact that the defendant was a stranger in the vicinity and did not know who .were available as witnesses does not excuse his failure to secure witnesses who might have been found before his conviction.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding.

WILLIAMSON, SIMPSON & GEORGE, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, J. P. STREU-
BER, State's Attorney, VIRGIL L. BLANDING, and WILLIAM
N. P. SMITH, for the People.

Mr. CHIEF JUSTICE FARMER delivered the opinion of
the court:

Plaintiff in error, Frank Jones, (hereafter called defend-
ant,) was indicted, jointly with George Gusike, by the Madi-
son county grand jury for robbing James Cross of a watch
while armed with a revolver, with intent, if resisted, to kill
or maim Cross. Defendant was tried alone, found guilty,
and after overruling a motion for a new trial was sentenced
to imprisonment in the penitentiary. He was twenty-five
years old.

Counsel say in their brief the principal ground on which
they seek a reversal of the judgment is that the evidence
was not sufficient to warrant the verdict. In support of the
motion for a new trial defendant presented affidavits of
newly discovered evidence, and these also are urged as rea-
sons why the court erred in not granting a new trial.

James Cross lived in Granite City. On the night of
December 17, 1921, he and two companions visited the
Shamrock saloon, in Madison, some time after midnight.
Cross testified that while in the Shamrock saloon he visited
the toilet, and while in there someone started to feel his hip
pockets. He looked around and inquired of the man what
he was doing. The man said he was proprietor of the place
and wanted to know if Cross had a gun, and Cross made
no resistance to his further examining him for that purpose.
He testified the man who did it was defendant, Frank Jones.
Cross went back into the saloon and met his companions,
who were Clyde Cotrell and Ray Jones. He testified the
three of them left the saloon and started walking down the
street, and about a block away someone ran in front or at
the side of them and shouted, "Stick them up!" He testi-
fied defendant pointed a gun at him and he put up his hands.

Defendant took his watch. There were two men with defendant. They were fighting with Ray Jones. Witness saw Ray running away, and after he had run ten or fifteen feet defendant shot at him. Cotrell was standing by the side of the witness, who testified he was running at the time the shooting started. The robbery occurred between two and three o'clock in the morning of the 18th. Witness testified he and his companions were not drunk. There were fifteen or twenty men in the Shamrock saloon, drinking and arguing, but witness had no argument with them. He complained· to a policeman, and defendant was arrested in the saloon. Witness had money on his person, but that was not taken.

Ray Jones testified for the State that he was at the Shamrock saloon with Cross and Cotrell and they left that place together to get a car for Granite City. Defendant, Gusike, and a man he did not know, came running up behind them, shouting, "Stick them up!" Gusike and the unknown man jumped on witness, and a fight occurred between them, witness and Cotrell. He could not see what defendant and Cross were doing. As soon as witness could break away he started to run. He testified defendant shot at him twice. During the fight witness was hit on the nose twice and a slit was cut in his overcoat. He testified he was sober and that he had no quarrel in the saloon. There was a large crowd in the saloon and men and girls were dancing.

The above is the material substance of the testimony for the State.

Defendant testified he was employed in the post-office at St. Louis. About eleven o'clock in the night of the 17th he and his friend, George Franey, came to Madison and visited the Shamrock saloon. He remembered seeing Cross there. There were fifteen or twenty in the saloon. He never saw Gusike before that night. He was arrested in the saloon about two o'clock. He testified he did not go into the toilet

and feel Cross' pockets. He had no gun and never owned one. The officer searched him and found no gun. The evidence shows the watch was not found. He testified he knew of no shooting outside or any trouble. There were little arguments in the saloon about drinks. The men were drunk, and the witness testified he was "feeling pretty good." He saw Cross come in the saloon. He never saw him before, and he came in drunk. He denied being guilty of the robbery or knowing anything about it.

Leo Haney testified for defendant that on the night of the robbery he was tending bar at the Shamrock saloon. He saw defendant there and saw him arrested about two-thirty o'clock in the morning. He came into the saloon about eleven o'clock. Franey was with him and was in the saloon when defendant was arrested. Witness knew of no trouble outside until they came and arrested defendant. There were little arguments in the saloon. From the time defendant came into the saloon he had not left it before his arrest. He was pretty drunk. Cross and Gusike were drunk and had an argument. He refused Cross a drink because he was too drunk. He never saw defendant until that night. He came into the saloon and asked for a drink, and witness refused him because he was drunk.

George Franey testified for defendant that he went from St. Louis to Madison and to the Shamrock saloon with defendant. They arrived there about eleven o'clock. There was a large crowd in the saloon. Cross came in afterwards with two or three men, one of whom he afterwards learned was Gusike. Gusike was "under the weather," and so was Cross. Cross and his friends had an argument with Gusike about drinks. Witness saw them leave the saloon and saw nothing more of them afterwards. Defendant did not leave the saloon after he went in, until the officer came and arrested him. He sat on a chair by the stove. Witness never knew Cross before that night. He and defendant had been drinking when they came to the saloon and

were feeling pretty good, but he was not so drunk that he did not know what was going on in the place.

The above was the substance of the testimony given on behalf of defendant.

Counsel who represented defendant has died since the trial, and counsel now representing defendant were not then engaged in the case.

If the People's testimony was believed by the jury to be true and defendant's evidence was not believed by the jury to be true, the verdict of guilty was warranted unless it can be said the jury acted unreasonably in giving credit to the People's testimony and not to defendant's. It is not claimed the verdict was influenced by passion or prejudice excited at the trial. The record shows the trial was orderly, and nothing improper occurred to defendant's prejudice on the part of court or counsel. It is contended by defendant that the witnesses for the State had never seen him before the night of the robbery; that they did not mention any particular thing about his dress or appearance or the light by which they were able to identify him, and for these reasons their identification was not sufficient to warrant a verdict of guilty. Both Cross and Ray Jones testified they were in the saloon about an hour and saw defendant there. Cross testified defendant followed him to the toilet and examined his pockets to see if he had a gun, representing himself to be the proprietor of the saloon. Both Cross and Jones testified defendant was one of the party who held them up, and Cross testified defendant pointed his gun at him and robbed him of his watch while the other four men were engaged in fighting, and that when Jones broke away and ran, defendant shot at him twice. Their testimony was given without any expression of doubt about their knowing defendant was the man, and was not shaken on cross-examination. In fact, the abstract does not show they were asked, on cross-examination, to give any particular reason or circumstance why they knew it was defendant. Simply be-

cause defendant's evidence is in conflict with the People's is not sufficient to authorize a court of review to reverse the judgment. The law has conferred on the jury the right and power to determine the weight and credit to be given the testimony of the witnesses, and courts universally recognize that, with the opportunity to see and hear the witnesses, they are better able to do that than a court of review. (*People* v. *Stathus,* 303 Ill. 326; *People* v. *Cunningham,* 300 id. 376; *People* v. *Grove,* 284 id. 429.) We have held in many cases that where the evidence is of such character that this court is convinced the jury disregarded the rule that guilt of crime must be proved beyond a reasonable doubt, a reviewing court will, and should, reverse a judgment of conviction. We cannot see any indication, from the testimony itself or from the record, why the jury should not have believed the testimony for the People. That they did believe it and did not believe defendant's evidence was the cause of the verdict, and we cannot say, from the record, they erred in their verdict.

One of the grounds of the motion for a new trial was newly discovered evidence. Defendant presented the affidavits of four persons as to what they would testify if a new trial were granted. What they said they knew about the affair was to the effect that Cross was in the saloon intoxicated, quarreling with his companions, and two of the affiants said they saw him and others quarreling just outside the saloon about being beat out of money with loaded dice, and some of them made affidavit that defendant was in the saloon when Cross left and did not leave it until the parties came back with an officer and had him arrested. The officer who made the arrest made affidavit that the saloon was on his beat, that he heard no shots, and that when arrested defendant had no gun. Without regard to the cumulative character of the testimony, we are of opinion defendant did not show diligence in trying to discover this evidence before the trial. The indictment was returned at the Janu-

ary term, 1922, of the circuit court. He was released on
bail. In June following the case was continued on motion
of defendant, and the trial was had in November. In his
affidavit as to the discovery of the new evidence after the
trial, defendant says he was a stranger in the village of
Madison; that he knew no one in the saloon except Fra-
ney; that after he was indicted he tried to procure testimony
from persons who were present but was unable to learn
who they were, but since his conviction his friends have
procured the affidavits. He further states that while the
jury was being empaneled he was permitted to visit Madi-
son to look for evidence, and was unable to find any infor-
mation about the witnesses whose affidavits he filed in sup-
port of his motion for a new trial. He had nearly a year
after the indictment was returned before the trial to prepare
his evidence, and no reason is given why he did not do so.
The only excuse made is that he was a stranger, knew no
one who was present and could not learn the names of
anyone. After his conviction it did not take his friends
long to find witnesses who professed to know something
about the matter. We cannot accept his affidavit as any
showing of diligence. To justify granting a new trial on
account of newly discovered evidence it must be shown that
diligence was exercised to discover and procure the evi-
dence, and it must also be shown that it is not merely cumu-
lative to that given at the trial. *Williams* v. *People,* 164
Ill. 481; *Bean* v. *People,* 124 id. 576; *Klein* v. *People,* 113
id. 596.

No errors other than those referred to are argued in
defendant's briefs. We are of opinion a reversal of the
judgment is not justified by the record, and it is accord-
ingly affirmed.

*Judgment affirmed.*