THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LESLIE KILBANE, Plaintiff in Error.

*Opinion filed June 16, 1926.*

CRIMINAL LAW—*jury must determine credibility of witnesses—review.* Where the testimony regarding the material facts in issue is directly in conflict and irreconcilable and where the witnesses on both sides were intoxicated at the time of the circumstances to which they testify, it is the peculiar province of the jury to determine the credibility of the witnesses and upon which side the truth of the controversy lies; and the Supreme Court in such case will not disturb the jury's verdict finding the defendant guilty unless it is satisfied, from a consideration of all the testimony, that there is a reasonable doubt of guilt.

WRIT OF ERROR to the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding.

DOUGLAS C. GREGG, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ASHBEL V. SMITH, State's Attorney, and ROY D. JOHNSON, (SIDNEY H. BLOCK, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Leslie Kilbane, was convicted in the circuit court of Lake county of the crime of robbery and sentenced to imprisonment in the State reformatory. He prosecutes this writ of error to reverse the judgment on the ground that the evidence does not establish his guilt beyond a reasonable doubt.

Thomas Walenter testified that he came to Waukegan about four o'clock in the afternoon, Saturday, February 28, 1925; that he went to Curt Randle's lunch room; that about 5:00 o'clock he went to a barber shop, where he had a drink of intoxicating liquor; that from there he went to Randle's lunch room, where he had supper; that about 7:30 o'clock he left Randle's and was followed by plaintiff in error and Raymond Mills, whom he had seen in Randle's place; that he was followed west on Eleventh street to a point near McAlister avenue, where he was struck in the back of his head and knocked to the ground; that he tried to get up several times but was knocked down each time; that the two men searched him and took from him a watch worth $21, a watch chain worth $10, a Moose charm worth $12, a stickpin worth $10, a gold pencil worth $5, and $1.25 in change; that in the watch-pocket of his trousers he had two ten-dollar bills, which they did not take; that the chain, charm, pencil and stickpin have not been returned to him, and that he did not see the watch from the time it was taken from him until it was shown to him at the trial.

Plaintiff in error testified that he is twenty-three years old; that he has lived in Waukegan all his life; that in February he was employed as a foreman in a Waukegan factory; that he met Mills at the Royal pool-room about five o'clock in the afternoon of February 28; that they purchased a pint of whiskey at Waukegan Inn and drank about half of it; that they went to Randle's lunch room about 6:30 o'clock, where they remained about an hour and a half; that they met Walenter there and had some drinks with him; that they played cards and drank whiskey in Randle's place until they became so noisy that Randle made them leave; that Walenter suggested that they go with him to another place where he knew they could get more to drink; that he left Randle's with Mills and Walenter and walked north on Sheridan road to Eleventh street; that there Mills said, "We might as well finish this pint of whiskey I have;" that witness took a drink from the bottle, after which Mills took a drink and then handed the bottle to Walenter; that Walenter became angry because there was so little left in the bottle, and with the remark, "If that is all you can save a fellow you better keep it," threw the whiskey in Mills' face; that thereupon Mills knocked Walenter down and began to beat him; that witness undertook to separate them and that Walenter grabbed his silk shirt and tore it; that he thereupon knocked Walenter down; that Walenter then got up and ran west on Eleventh street; that after Walenter had gone Mills saw a watch lying on the ground; that they picked it up and found on it a piece of chain about four or five inches long; that they did not find any money or other property there nor did they take any property from Walenter; that they returned to Randle's place to see if Walenter had returned, or to find out where he lived so that they could return his watch; that Randle told them to leave because he did not want any trouble about his place; that witness did not know where Walenter lived and had never seen him before

that evening.  He further testified that the next day he was going to a roadhouse north of Zion City to continue his spree, and, being afraid he might lose the watch before he could return it to Walenter, delivered it to his friend, Joe Ricks, to hold for him.  He returned home from Zion City and was at his home Monday when he was arrested. The officer asked him if he knew why he was being arrested, and he answered that he supposed it was because of the fight he had had Saturday night.  The officer asked him what he did with the watch, and he answered that he had left it with Ricks.

Mills, who was not tried with plaintiff in error, testified as a witness for the defense and corroborated the story told by plaintiff in error.  Dr. Alfred Budde testified that he visited Walenter at his home about 8:30 o'clock on February 28 and found him lying on a couch, with his face badly bruised and swollen.  Frank Tiffany, chief of police of North Chicago, testified that when he arrested plaintiff in error he asked him if he had taken the watch, chain, fob, stickpin and pencil from Walenter, and that plaintiff in error replied that he had not; that he told plaintiff in error he had better tell him what he knew about the matter, and that plaintiff in error answered that he had left the watch with Ricks.  Joseph Ricks testified that plaintiff in error met him on the street one evening and handed him a watch, saying, "Hold this for me;" that plaintiff in error was intoxicated, and that he does not remember all plaintiff in error said when he gave him the watch.

In rebuttal Walenter testified that he did not drink with plaintiff in error at Randle's lunch room, that he did not invite plaintiff in error to leave Randle's with him, that he did not throw whiskey in Mills' face, and that the fight described by plaintiff in error did not take place.

This is the substance of all the testimony in the record. If the story told by the complaining witness is true then

322—13

plaintiff in error is guilty of the crime of which he stands convicted, but if the story told by plaintiff in error is true he is not guilty of the crime of robbery. It is evident that all the principals to this unfortunate occurrence were intoxicated, and that fact affects the credit to be given their testimony. The jury had all this information before them and also had the advantage of observing the demeanor of the witnesses as they testified. It is not possible for this court to tell from the printed abstract of the testimony of the witnesses who is telling the truth. For that reason the law has intrusted to the jury the duty of determining the credit and weight to be given the testimony of the several witnesses. Where the testimony regarding the material facts in issue is directly in conflict and irreconcilable, and its conclusion in such case of necessity depends largely upon the credit to be given the opposing witnesses, it is the peculiar province of the jury to determine on which side of the controversy the truth lies. In such case this court has no right to interpose by substituting its own opinion when the jury have honestly and according to their best light performed this duty, unless this court is satisfied, from a consideration of all the testimony, that there is a reasonable doubt of the guilt of the accused. (*People* v. *Jones,* 310 Ill. 275; *People* v. *Stathus,* 303 id. 326.) The trial judge, who saw and heard the witnesses, has approved this verdict, and we see no reason for setting it aside.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*