(No. 20016.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MATTHEW J. O'GRADY, Plaintiff in Error.

*Opinion filed April 17, 1930.*

FRANK A. McDONNELL, (ELWYN E. LONG, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JOEL C. FITCH, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE SAMUELL delivered the opinion of the court:

The plaintiff in error, Matthew J. O'Grady, was convicted in the criminal court of Cook county on February 19, 1929, of assault with intent to murder. Motions for a new trial and in arrest of judgment having been overruled and judgment entered upon the verdict, he has sued out this writ of error to review that judgment.

An extended statement of the facts will be unnecessary. The assault occurred on March 20, 1928, during a quarrel which appears to have been the culmination of a series of petty quarrels between the complaining witness, Ralph Oakley, and his wife, and the wife and child of plaintiff in error. Oakley and O'Grady lived opposite each other on One Hundred Fifty-fifth street, in Oak Forest. On May 17 Oakley's four-year-old son was playing with the O'Grady boy, who was several years his senior. They became involved in a dispute and Oakley crossed the street and took his child home. At that time he appears to have made some insulting remarks to Mrs. O'Grady. On Sunday morning, May 20, Oakley was digging in a ditch near his home when O'Grady approached and the quarrel and assault ensued. Oakley testified that O'Grady came to within eight or nine feet of where he was working in the ditch and said, "Ralph, I will give you two minutes to apologize to my wife;" that he replied that he had nothing to apologize for, and O'Grady thereupon drew his revolver and commenced firing; that he fired five times and three of the bullets took effect. There were no close eye-witnesses but a number of witnesses testified that they saw the shooting, and their testimony corroborates that of Oakley with reference to the positions of the two men at the time of the shooting.

The plaintiff in error was the only witness in his own behalf as to the facts, and he claimed that he shot in self-defense and without any intent to kill. He testified that he looked out of the window of his house and saw Oakley

working in the ditch; that he put his revolver in his pocket and went out to the place where Oakley was working; that his reason for taking the revolver was that he had been told of the bad reputation of Oakley; that he said to Oakley, "Ralph, you have been insulting the wife and the boy;" that before he could say more Oakley struck at him with his spade; that Oakley came part way out of the ditch and struck at him again; that he (O'Grady) thereupon drew his revolver and commenced firing at Oakley's legs; that Oakley kept coming toward him, swinging his spade at him; that he continued to fire at Oakley until he had fired five shots. One of the bullets entered the upper part of Oakley's thigh and another struck him in the hip but did not penetrate.

The only other testimony adduced by plaintiff in error was that of several witnesses who knew the reputation of the complaining witness as a peaceable and law-abiding citizen and testified that it was bad. On rebuttal the People produced several witnesses who testified that Oakley's reputation as a peaceable and law-abiding citizen was good.

Plaintiff in error first contends that the evidence does not prove him guilty beyond a reasonable doubt. The only eye-witnesses who were close to the scene of the shooting were the complaining witness and the plaintiff in error, and their testimony is in direct conflict. It is obvious, however, that O'Grady, after arming himself with a revolver, sought Oakley and quarreled with him. The testimony of the other eye-witnesses tends to corroborate the testimony of Oakley that he did not attack O'Grady and was not in a position to do so. The jury had the witnesses before them and could better judge of their intelligence, credibility and manner of testifying than we can from the printed record. Where the testimony regarding the material facts in issue is in conflict and the conclusion reached must of necessity depend largely upon the credit to be given the opposing witnesses, it is the peculiar province of the jury to deter-

mine upon which side of the controversy the truth lies. (*People* v. *Stathus,* 303 Ill. 326.) In such a case this court will not substitute its judgment for that of the jury unless it is clear that there is a reasonable doubt of the guilt of the accused. In this case we think there is ample evidence to sustain the verdict.

It is next contended that there was no evidence to show any intent to kill, and that the verdict of the jury finding the plaintiff in error guilty of assault with intent to kill was the result of passion and prejudice. While it is true the plaintiff in error testified that he did not intend to kill Oakley and that he shot at his legs, we cannot say there was not sufficient evidence to sustain the verdict. It is apparent from the testimony of the physician who attended Oakley that one of the bullets struck in the upper part of the thigh and another in the hip. Either of these bullets might have caused death had they struck in a slightly different place. Criminal intent may be manifested by the circumstances connected with the perpetration of the offense without any positive testimony as to such intent. (*People* v. *Yuskauskas,* 268 Ill. 328; *Crosby* v. *People,* 137 id. 325.) In the latter case we said: "It is not necessary to a conviction, however, that an express intention need be proved. Every sane man is presumed to intend the natural and probable consequences of his act, and it has been uniformly held, therefore, that the intent may be inferred from the acts of the person charged with crime as well as by words or declarations."

It is further urged on behalf of plaintiff in error that the trial court erred in overruling the motion for new trial instanter. The record does not show that any such action was taken by the court. From anything appearing in the abstract or the record the court may have allowed several hours in which counsel for plaintiff in error might have prepared for argument on the motion. If the action of the trial court was arbitrary it would have been a simple

matter to have preserved the question for review. Since it was not preserved plaintiff in error cannot now be heard to complain.

Upon an examination of the entire record in this case we are convinced that the verdict was right, and the judgment is therefore affirmed. *Judgment affirmed.*