[Crim. No. 428.   Third Appellate District.—April 16, 1918.]

## THE PEOPLE, Respondent, v. AH GEE, Appellant.

CRIMINAL LAW—PRINCIPALS IN COMMISSION OF CRIME.—One who aids and abets in the commission of a crime, though not present when the act, the final step in its commission, is committed, is logically a principal, whatever may have been the character, nature, quality, or extent of the assistance contributed by him toward its consummation or the execution of the intent jointly formed by him and the actual perpetrator of the act to do the wrongful act.

ID.—PRINCIPALS AND ACCESSORIES — DISTINCTION ABROGATED — CHARGE AND TRIAL OF ACCESSORY AS PRINCIPAL.—The distinction existing at common law between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, has been abrogated, and all persons concerned in the commission of a felony are to be prosecuted, tried, and punished as principals, and no other facts need be alleged in any indictment or information against such an accessory than are required in an indictment or information against his principal.

ID.—MURDER—DEFENDANT'S CONNECTION WITH CRIME—EVIDENCE—INCONSISTENT THEORIES — INSUFFICIENT GROUND FOR REVERSAL. — Under an information charging the defendant jointly with two other persons of the crime of murder, without any attempt at describing how or in what manner the act was committed, or any allegation that the defendant was merely an aider and abetter of the crime, the prosecution was entitled to prove the charge by any testimony which would reveal the defendant's connection therewith, and the fact that there was testimony which tended to establish two different theories upon which the defendant may have been a participant in the commission of the crime, is no ground for reversal of the judgment.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. D. M. Young, Judge.

The facts are stated in the opinion of the court.

Ben Berry, D. P. Eicke, and Roy Bronson, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—Defendant and two others, Toy Lee and Foo Kee, were jointly charged, in an information filed by the district attorney of San Joaquin County, with the murder of one Lee Wun, in the city of Stockton, on March 21, 1917. Separate trials of the defendants were had and Ah Gee was convicted of the crime of murder of the first degree and was sentenced to imprisonment in the state prison for the term of his natural life. The appeal is from the judgment and from an order denying defendant's motion for a new trial.

The record discloses that Lee Wun met his death during a tong war. He and the three defendants above named were engaged in the shooting and Foo Kee testified that he was fired upon by one Lim Buck Hee.

There is but one point urged for a reversal and it is this: That the prosecution presented its case upon two distinct and inconsistent theories, to wit: 1. That the defendant aided, abetted, and assisted Toy Lee in the murder of Lee Wun; and 2. That Ah Gee himself actually killed and murdered said Lee Wun. In support of this proposition, appellant calls attention to the testimony of the witnesses, C. W. Potter and A. F. Peterson, who testified to having been eyewitnesses to the homicide and who gave testimony for the people.

Potter, a police detective of the city of Stockton, testified that he was in a store on East Market Street; that he heard shooting, went out of the store and saw three men in the street (the three defendants) shooting at Lee Wun; that as he looked out of the door he saw Ah Gee step up and fire two shots. The witness "hollered" at defendant, who turned and started to run west. Foo Kee fired a shot and ran east. Lee Wun was backing away and firing and Toy Lee kept ad-

vancing. At the final shot by Toy Lee the deceased fell
to the ground. Witness said that after he saw Ah Gee and
Foo Kee running away he gave all his attention to Toy Lee
and Lee Wun and saw nothing more of defendant.

Peterson testified that he heard shots and saw Ah Gee
shooting at a man who was running. He testified: "He was
running and he was firing at him as he ran. He just had his
gun out, all he had in his hand; he was bang, bang, bang,
bang at this man. It seemed to me like when this man fell
. . . defendant stopped and started to go down—he first
started off at a walk, then he took a little dog trot. . . . I
had my eye on nothing else but him and never took my eye
off him till the minute he was caught." The witness said
he saw no one but the defendant shooting and saw no other
Chinaman with him.

According to the testimony of Potter, so the argument goes,
the defendant, having fired two unavailing shots at the de-
ceased and then ran away or disappeared from the scene
of the homicide, merely aided, abetted, and assisted Toy Lee
in the commission of the crime, while, on the other hand,
according to the testimony of Peterson, the defendant actu-
ally fired the shot which produced the death of Lee Wun.
Hence, so the argument proceeds, there were presented by the
people two inconsistent theories of the part taken by the de-
fendant in the commission of the crime, and this, it is claimed,
is fatal to the result reached by the jury.

The position of the defendant, as above set forth, is not
well taken.

Under the common law, a principal in the commission of a
crime was of two degrees, viz.: 1. One who was the actual actor
or absolute perpetrator of the crime, who was a principal in
the first degree; 2. One who was present, actually or con-
structively, aiding and abetting the fact to be done, who was
a principal in the same degree. (4 Cooley's Blackstone, 4th
ed., p. 34.) One who, being absent at the time of the crime
committed, procured, counseled, or commanded another to
commit the crime, was an accessory before the fact, and un-
der the common law it was necessary to prosecute, try, and
punish him as such accessory and not as a principal. (Id.,
p. 37.) The distinction between a principal in the second
degree and an accessory before the fact, it will be observed,
was founded upon the presence or nonpresence at the com-

mission of the crime of the party aiding and abetting the actual perpetrator of the act which constituted the final consummation of the crime in its commission. Both, though, were nevertheless principals. However, the act of an accessory before the fact was treated by the common law as constituting a substantive offense, distinct from, though growing out of, the principal fact itself. A number of reasons are given by the learned English commentator why the distinction was maintained by the common law. Among these the most substantial from a present-day point of view was that the accused might know how to defend himself when indicted, "the commission of an actual robbery being quite a different accusation from that of harboring the robber." There are other reasons given for the distinction which are not at all germane to our system, as, for instance, the right of an accessory after the fact to claim the benefit of clergy, notwithstanding that the punishment prescribed to both principal and accessory, whether before or after the fact, was the same, the principal's offense not being clergyable. But there cannot logically be said to be less moral turpitude or a less or different degree thereof in the act of a person who, though not actually committing the act constituting the crime, and not present when it is committed, has actively, with the intent that it shall be committed, contributed to or aided and abetted, by advice or counsel or command or otherwise, in its commission, than there is in the act of the person who actually perpetrated the crime. Indeed, abstractly speaking, from no point of view can there be found any logical reason for the distinction. If A and B join in the formation of an intent to commit a crime and assign to each other different parts for the execution of that intent—one actually to perpetrate the act and the other to perform some other part which they conceive to be necessary to consummate the crime —how may it logically be said that the one is not equally a principal with the other? It is the execution of the joint criminal intent which constitutes the crime, and it is immaterial, so far as the degree of guilt is concerned, how or by whom of the two it is actually accomplished. If the one aids and abets in the commission of the crime, though not present when the act, the final step in its commission, is committed, he is logically a principal, whatever may have been the character, nature, quality, or extent of the assistance contributed

by him toward its consummation or the execution of the intent jointly formed by him and the actual perpetrator of the act to do the wrongful act.

Thus, undoubtedly, our legislature viewed the proposition and, therefore, by express mandate, has abrogated the mere formal distinction (and it was no more than this) existing at common law between principals in the commission of crimes and accessories before the fact, or those participating in their commission without actually perpetrating the acts which, with the intent, constitute the crime. Therefore, whatever may be the law in other jurisdictions, the rule in this state, as laid down by the legislature, is that ''all persons concerned in the commission of a crime, whether it be felony or misdemeanor, *and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission,* . . . are principals in any crime so committed.'' (Pen Code, sec. 31.) Again, the rule, as promulgated by the legislature, is that ''the distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated; and all persons concerned in the commission of a felony, *whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present,* shall hereafter be *prosecuted, tried* and punished as principals, and no other facts need be alleged in any indictment or information against such an accessory than are required in an indictment or information against his principal.'' (Pen. Code, sec. 971.)

Of course, there should be no confusion arising from the distinction existing between *accomplices* and accessories in crime. An accessory necessarily presupposes a principal in the very crime committed and at the same time he is an accomplice of the principal, while, on the other hand, ''it is not a legal criterion of an accomplice that he must be indictable as principal for the same identical crime as that charged against the defendant on trial. He may have advised and encouraged that crime, and so be an accomplice therein, and yet be punishable as principal for an offense distinct therefrom, yet associated therewith, to which the law attaches a distinct punishment.'' (*People* v. *Coffey,* 161 Cal. 433, [39

L. R. A. (N. S.) 704, 119 Pac. 901].)  In brief, an accessory is always an accomplice, while an accomplice is not necessarily or always an accessory in the commission of the crime in whose consummation he has aided and abetted.

Under our code sections, above quoted herein, an accessory is not only to be charged in the accusatory pleading as a principal, but is also to be *tried* as a principal; hence it is immaterial what the proof shows was the nature of the part that the accused took in the commission of the crime—that is, it is not a matter of material importance whether he is shown to have been the actual perpetrator of the criminal act or only aided and abetted in its commission.  In either case, he is a principal, and it can make no difference in the proof of the charge what particular act he did or part he took in the execution of the criminal act that made him one.

In the present case, the defendant, jointly with two others, is charged in the information with the murder of Lee Wun. There is but one count in the information and that is the usual or common one by which murder, as defined by the law, is charged.  There is no attempt at describing how or in what manner the act was committed or any allegation that the defendant was merely an aider and abettor of the crime, an allegation which is not required under our law.  The prosecution was entitled to prove the charge by any testimony which would reveal the defendant's connection  therewith. It happened that, while one of the witnesses presented by the people to support the charge testified that he saw the defendant fire a shot into the body of Lee Wun, another witness, likewise presented, testified that the accused fired a couple of shots at the deceased, which apparently failed of their mark, and then disappeared from the scene of the shooting.  Even according to the common law, the defendant would be a principal under the testimony of the witness Potter.  But the testimony of both witnesses was material, relevant, and competent, and, therefore, clearly admissible in any event as tending to prove the ultimate fact in issue, viz.: That the defendant killed and murdered Lee Wun.  Indeed, the objection to the testimony on the ground that it tended to establish two different theories upon which the defendant might have been a participant in the commission of the crime does not go to the proposition that said testimony does not

show, or tend to show, the guilt of the accused of the crime charged but to the proposition that he was a party to the commission of the crime in two different ways. As we view the situation, the proposition is no different in principle from a case where one witness for the people had testified that the deceased had been killed by a blow with a club in the hands of and wielded by the defendant, while another witness for the people had testified that the death of the deceased had been produced by the defendant by means of a knife, the particular manner in which death was produced not being alleged in the indictment.

But, as stated, the people had the right to make the proof as it was made and leave to the judgment of the jury the question whether upon the whole the evidence was of sufficient probative force to warrant the conviction in their minds that, beyond a reasonable doubt, the defendant, whatever might have been the nature or extent of the part he might have taken in the commission of the act, was guilty as charged.

But, after all, we can see in this case nothing very much different from what is to be found in the large number of criminal cases which find their way to courts of appeal, for it may safely be said that there is rarely to be encountered a criminal case in which there is not to be found some conflict upon vital questions of fact between witnesses whose testimony is presented by the people in support of the charge. The same may be said to be true in some measure of witnesses whose testimony is offered in support of the defense. But the courts are not authorized to reverse the result reached at *nisi prius* because of such conflicts or because of inconsistencies or disparities in the testimony of any one witness. These are matters for the jury to resolve. That is one of their important functions. Nor will the courts reverse a case merely because, as is the claim here, the testimony presented to sustain a criminal charge tends to disclose two different and inconsistent theories of how the accused committed the act charged. Such a situation might affect the evidential strength of the people's case, but it involves a question solely for the jury's determination, unless it plainly appears that, upon the testimony as it is presented in the record up for review, both theories are inherently improbable. We may add that there would not be many criminal cases which could

escape the fate of a reversal if for such reasons courts of review were required to nullify the verdicts of juries.

The judgment and the order are affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 14, 1918.