[Crim. No. 1079.  Second Appellate District, Division One.—June 2, 1924.]

THE PEOPLE, Respondent, v. D. GORDON REVLEY et al., Appellants.

[1] CRIMINAL LAW—OBTAINING MONEY BY FALSE PRETENSES—JOINT ENTERPRISE—ABSENCE OF ONE DEFENDANT.—In this prosecution for the crime of obtaining money by false pretenses the evidence warranted the conclusion that, at least as between the two defendants, a general plan of action had been agreed upon by which, through fraudulent means, they would obtain money from many different persons, including the complaining witness, and the mere fact that one of the defendants was not present at the time the complaining witness gave the money in question to his codefedant did not exonerate such other defendant from criminal liability.

[2] ID.—PROOF OF AGREEMENT—CIRCUMSTANTIAL EVIDENCE.—In such a prosecution, it is not necessary to reproduce word for word the agreement or understanding which existed between the two defendants respecting the proposed commission of the crime, but the existence of such understandings may be shown by circumstances, and by acts, conduct and such admissions of the parties as may be obtainable.

[3] ID.—PROOF OF CRIME—RELIANCE UPON FALSE REPRESENTATION.— The success of establishing the crime of obtaining money by false pretenses does not depend upon the proof of every fact alleged in the information; but it is sufficient if one material false representation by the defendant is shown to have been made which was relied upon by the victim and induced him to part with his property.

1.  See 5 Cal. Jur. 523.
2.  See 5 Cal. Jur. 521; 5 R. C. L. 1088.
3.  See 12 Cal. Jur. 466; 11 R. C. L. 836, 863.

[4] ID. — DESCRIPTION OF PROPERTY — IMMATERIAL VARIANCE.—In a prosecution for the crime of obtaining money by false pretenses, the mere fact that a mistake is made in the information in the description of a part of the property of the complaining witness which defendants schemed to procure, cannot avail them in their efforts to escape criminal liability for obtaining by false pretenses another part of the property which is properly described.

[5] ID.—OPERATING UNDER COMMON DESIGN—CONSPIRACY—EVIDENCE—INSTRUCTIONS.—In such a prosecution, where the evidence justifies the assumption by the court of the possibility that defendants were operating under a common design of accomplishing a purpose of a criminal nature, it is not error to instruct the jury, as a part of the instructions bearing upon the subject of conspiracy, that "it is not necessary, in order to prove a conspiracy, to show a meeting and actual agreement of the conspirators to commit a crime. The fact that a conspiracy was formed may be inferred from all the circumstances tending to show the common intent," and that "the existence of such conspiracy may be proved in the same way as any other fact may be proved, either by direct testimony of the fact or by circumstantial evidence, or by both direct and circumstantial evidence."

[6] ID.—CONSPIRACY—MERGER OF OFFENSES—EVIDENCE.—In a prosecution for the crime of obtaining money by false pretenses, evidence of criminal conspiracy, if pertinent to the proof of the offense charged, is admissible, and it is immaterial whether there was or was not a merger of the two offenses.

[7] ID.—MISCONDUCT OF TRIAL JUDGE—ERROR WITHOUT PREJUDICE.—In such prosecution, assuming the remarks of the trial judge as to what the complaining witness had testified to with reference to the defendants being together, constituted error, the matter was of no great importance, and was not grave enough to warrant a reversal of the case on that account.

---

(1) 25 C. J., p. 617, sec. 53, p. 618, sec. 53.   (2) 25 C. J., p. 651, sec. 88.   (3) 25 C. J., p. 637, sec. 74, p. 640, sec. 75.   (4) 25 C. J., p. 640, sec. 76.   (5) 25 C. J., p. 655, sec. 95.   (6) 16 C. J., p. 597, sec. 1162; 25 C. J., p. 644, sec. 84.   (7) 17 C. J., p. 295, sec. 3637.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Edwin F. Hahn, Judge.   Affirmed.

The facts are stated in the opinion of the court.

---

4.   See 12 Cal. Jur. 466; 11 R. C. L. 863.
5.   See 5 Cal. Jur. 521; 5 R. C. L. 1088.
6.   See 5 Cal. Jur. 522; 5 R. C. L. 1077.
7.   See 8 Cal. Jur. 599; 2 R. C. L. 230.

Buel R. Wood for Appellants.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and John L. Flynn for Respondent.

HOUSER, J.—Defendants appeal from a judgment of conviction of the crime of obtaining money by false pretenses and from an order denying their motion for a new trial.

The information, in effect, charged that the defendants, with intent then and there to cheat and defraud one Olive A. Stowell, did willfully, unlawfully and feloniously pretend and represent to the said Olive A. Stowell that the defendants were the authorized agents of and for the J. E. Barrett Company of San Francisco, and that the defendants were purchasing oil stock for and on account, and as agents of the said J. E. Barrett Company, which said company was represented as being an established and responsible brokerage house, and that the said company, through the defendants, was acquiring a corner and controlling interest in certain oil stocks owned by the said Olive A. Stowell, to wit: certain shares in the Hamilton No. 3 oil well of the Hamilton Oil Syndicate; that the defendants did then and there pretend and represent to the said Olive A. Stowell that if she would give to defendants twelve shares of such capital stock owned by her and the further sum of $350, the defendants would, through and on account of the said J. E. Barrett Company, give to the said Olive A. Stowell certain shares of stock of the Southern California Edison Company of the par value of $3,000; that the said Olive A. Stowell then and there believed the said false and fraudulent pretensions and representations and relied thereon and was deceived thereby, and was then and there and thereby induced by reason of the said false and fraudulent pretenses and representations to pay over and deliver to the said defendants the sum of $350; and that each of the said representations was and all of them were false and untrue.

The record herein discloses that, for the purpose of defrauding complaining witness and others, defendant Mitchell assumed the fictitious name of A. L. Atkins, and that defendant Revley assumed the fictitious name of L. D. Bradley; that they obtained certain business cards and buy orders from an imaginary brokerage house in San Francisco, desig-

nated as J. E. Barrett Company, together with a letter purporting to have been written by said company and which letter authorized Atkins to act as agent and representative of said Barrett Company; that defendant Revley stated to defendant Mitchell that a Mr. Barrett was in the market for Hamilton No. 4 stock, and requested Mitchell to call upon complaining witness and others who held stock in the company referred to and ascertain if they desired to dispose of their stock; that defendant Mitchell, using the name of Atkins and at the request of defendant Revley, called on complaining witness and stated to her that he represented J. E. Barrett Company of San Francisco; that he was buying stock for that company, and asked complaining witness if she owned any stock in Hamilton No. 3, and what she had paid for it; to which complaining witness replied that she had paid $200 per share for her stock; that defendant Mitchell then stated to complaining witness that his company would pay her $200 a share for the stock, to which she answered that she would not sell until she had conferred with the company. Defendant Mitchell later informed defendant Revley that complaining witness would sell her Hamilton oil stock. Later defendant Revley called at the house of complaining witness and stated to her that Mr. Atkins (Mitchell) was unable to keep his appointment with her on account of illness, and that he (Revley) had come to see if she would sell her stock. At this time a daughter of complaining witness was informed by defendant Revley that complaining witness had "$2400 worth of worthless stock," and that he was empowered, as agent of the Barrett Company, to offer her par for it; that the reason they could pay par for the stock was that two wealthy Germans in San Francisco, who owned stock in the Hamilton Company, had decided that they wanted to get their money out and were willing to pay par value for the stock, even though they could buy it cheaper; that the Barrett Company did not pay money for stock like this, but turned over bonds or other stock in exchange; that he had offered complaining witness three Edison Company bonds worth $1,000 each for her stock in the Hamilton Company, and she was to pay the difference in cash; that the bonds would be delivered about a week later. Defendant Revley then took complaining witness to the bank and she gave him $350, for which Revley gave her a receipt. When they returned from the bank a

Mrs. Arfuedson was at the home of complaining witness. Mrs. Arfuedson told complaining witness that defendants wished to buy her stock and had come to see if she was going to sell it; that defendants were expected to come to her home for the purpose of making the trade. Subsequently, both defendants called at Mrs. Arfuedson's home and were shortly thereafter placed under arrest. Complaining witness testified that she relied upon the representations of defendants as to the Southern California Edison Company stock, and that the fact that defendants had stated to her that they represented the Barrett Company of San Francisco induced her to enter into the transaction. After defendants were arrested they voluntarily admitted that they were not from San Francisco; that no such concern as the J. E. Barrett Company existed; that the Mr. Barrett whom they represented was a man whose acquaintance they had made at the Alexandria Hotel, and that he had sent them out to buy this stock. They also admitted that they had used fictitious names because they knew it was a "phoney" deal and for that reason did not want their true names to be used. Defendants also stated that the $350 obtained from complaining witness had been used for their own personal benefit. After the arrest of defendants a letter was taken from the person of defendant Mitchell which purported to be on the letter-head of "J. E. Barrett Co., of San Francisco," addressed "To whom it may concern," and introducing A. L. Atkins (Mitchell) as a special representative of the J. E. Barrett Co., and authorizing Atkins to deal generally for said company in the purchase and exchange of "notes, securities, etc." For the purpose of identifying Atkins, his signature appeared on the margin of the letter. There were also taken from each of the defendants blank copies of "buy orders," also purporting to be on the stationery of "J. E. Barrett Co., San Francisco," as follows:

"Buy for me —— the above named securities on my behalf. Delivery guaranteed in —— days.

"Signed ——————————————."

[1] Appellants' first contention is that defendant Mitchell neither aided nor abetted defendant Revley in procuring the $350 from Mrs. Stowell; nor was he present at the time it was procured—from which it is argued that the conviction of defendant Mitchell was unlawful. The evidence, how-

ever, as heretofore outlined, warrants the conclusion that, at least as between the two defendants, a general plan of action had been agreed upon by which, through fraudulent means, they would obtain money from many different persons, including Mrs. Stowell. The mere fact that defendant Mitchell was not present at the time Mrs. Stowell gave the $350 to defendant Revley does not necessarily exonerate defendant Mitchell from criminal liability. It was unnecessary to show his personal participation in the offense at the exact moment of its commission. Section 971 of the Penal Code covers just such a state of facts as is here presented in that it provides that "the distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated; *and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present,* shall hereafter be prosecuted, tried, and punished as principals, and no other facts need be alleged in any indictment or information against such an accessory than are required in an indictment or information against his principals." And to the same effect, see the following cases: *People* v. *Nolan,* 144 Cal. 75 [77 Pac. 774]; *People* v. *Lewis,* 9 Cal. App. 279 [98 Pac. 1078]; *People* v. *Billings,* 34 Cal. App. 549 [168 Pac. 396]; *People* v. *Ah Gee,* 37 Cal. App. 1 [174 Pac. 371]; *People* v. *Sartori,* 43 Cal. App. 304 [184 Pac. 879]; also section 31, Penal Code.

[2] Naturally it would be impossible to reproduce word for word the agreement or understanding which existed between the two defendants' respecting the proposed commission of the crime. Such agreements are usually made in secret conference, with no intention of broadcasting even the ultimate conclusion. The existence of such understanding must be shown by circumstances, and by acts, conduct and such admissions of the parties as may be obtainable. In the instant case, if sufficient facts were adduced from which the inference of defendant Mitchell's guilt as an aider or abetter, with criminal intent, is either irresistible, or which convinced the jury of his guilt beyond a reasonable doubt, the demands of the law were met and he cannot complain of the verdict against him on that account. The evidence showed that defendants met and made certain arrangements previous to calling upon the complaining wit-

ness; that they assumed fictitious names for the purpose of negotiating the transaction; that the J. E. Barrett Company which defendants claimed to represent was known to them to be wholly fictitious; that defendants had upon their persons at the time of their arrest certain paraphernalia consisting of cards, buy orders and a spurious letter purporting to authorize defendant Mitchell, under the name of A. L. Atkins, to represent the said J. E. Barrett Company, and to accept on behalf of that company bonds or other securities; that defendants obtained from Mrs. Stowell $350; that defendants were together at the home of Mrs. Arfuedson for the purpose of making a similar deal with her; that after the arrest of defendants they admitted the nonexistence of the J. E. Barrett Company; that their names were not what they had pretended them to be, but were respectively Mitchell and Revley; and that they knew the transaction with Mrs. Stowell was not as represented to her by them.

Assuming that the jury believed the evidence, it is inconceivable that a different result than conviction of the defendants could have been reached.

[3] The next point for reversal relied upon by appellants is that a fatal variance exists between the allegations contained in the information and the proof, in that in the information defendants are charged with attempting to obtain Mrs. Stowell's holdings in Hamilton No. 3, while the evidence shows that it was a certificate of stock in Hamilton No. 4 which was the object of the felonious attempt. One of the objections, however, to appellants' argument in that regard is that defendants are not charged with an *attempt* to commit a criminal offense, but rather that they did in fact *commit* one, consisting, not in the larceny of either a certificate of stock in Hamilton No. 4 or a certificate of stock in Hamilton No. 3, but in the sum of $350 lawful money of the United States. The plan to get possession of the certificate, while possibly part and parcel of the main scheme, was but incidental to the much more important feature to defendants of acquiring possession of the money. The success of establishing the crime of obtaining money by false pretenses does not depend upon the proof of every fact alleged in the information; but it is sufficient if one material false representation by defendant is shown to have been made which was relied upon by the victim and

induced him to part with his property. (*People* v. *Ward,* 5 Cal. App. 36 [89 Pac. 874]; *People* v. *Meadows,* 22 Cal. App. 311 [134 Pac. 337]; *People* v. *Griesheimer,* 176 Cal. 44 [167 Pac. 521].)

The question relating to whether the certificate of stock owned by Mrs. Stowell was Hamilton No. 4 or was Hamilton No. 3 had nothing to do with any alleged misrepresentations made by the defendants to Mrs. Stowell. It is apparent that it would have been impracticable, if not impossible, to have misled Mrs. Stowell as to whether she owned shares of stock in Hamilton No. 4, or in Hamilton No. 3. That matter concerned the description of part of the property which it was alleged that defendants were attempting to feloniously obtain from Mrs. Stowell; and in view of the fact that the information contains no allegation of the accomplishment of the fraud as to the certificate of stock, whether of Hamilton No. 4 or Hamilton No. 3, or of any other certificate of stock, the variance, if it may be so designated, is not of great importance. Whether or not the proposition advanced by defendants or by either of them to Mrs. Stowell was that she trade her certificate of stock in Hamilton No. 4 or her certificate of stock in Hamilton No. 3 for Southern California Edison Company stock or bonds, and pay to defendants a certain sum of money representing the difference in the assumed respective values of the two commodities, was not the gist of the offense charged. The real point was whether, by means of certain alleged misrepresentations made by defendants to Mrs. Stowell, she was induced to and did part with the sum of $350; and the evidence strongly supports the conclusion reached by the jury that such was the case. **[4]** The fact that a mistake was made in the information in the description of a part of the property of the complaining witness which defendants' schemed to procure, cannot avail them in their efforts to escape criminal liability for obtaining by false pretenses another part of the property which was properly described. Had the subject matter of the transaction related to livestock and money, instead of stock of a corporation and money, and had the information contained the allegation that defendants attempted to feloniously obtain three sheep and $100 from the victim, but succeeded in getting only the $100; and had the evidence on the trial shown that it was

not three sheep but that it was three goats and $100 which defendants were seeking to thus acquire, but that the $100 was all that was actually obtained by defendants—it would approach a straining at a shadow to hold that the variance was of such great consequence that defendants' rights were materially injured or prejudiced thereby.

The protection which the law affords to those accused of the commission of criminal offenses is not intended to be enlarged by the invocation of mere legal technicalities which do not sound in the violation of some substantial right; and we are unable to perceive that there was any infringement upon any of the rights of either of the defendants by virtue of the matter of which complaint is made.

[5] It is next contended that the trial court erred in giving to the jury the following instruction:

"It is not necessary, in order to prove a conspiracy, to show a meeting and actual agreement of the conspirators to commit a crime. The fact that a conspiracy was formed may be inferred from all circumstances tending to show the common intent.

"The existence of such a conspiracy may be proved in the same way as any other fact may be proved, either by direct testimony of the fact or by circumstantial evidence, or by both direct and circumstantial evidence."

As heretofore pointed out, the evidence justifies the assumption by the court, for the purpose of instructing the jury, of the possibility that the defendants were operating under a common design of accomplishing a purpose of a criminal nature. There were many other instructions given to the jury bearing upon the subject of conspiracy, and while perhaps the subject is not completely covered thereby, certainly the essentials thereof applicable to the evidence were fairly presented. The instruction of which appellants complain is but a small portion of the entire body of instructions which deal with the subject of conspiracy. It merely directs attention in a general way to what may be considered by the jury in determining whether or not a conspiracy existed. No authorities are presented which suggest the impropriety of the criticised instruction. On the other hand, there are many authorities which in principle uphold it, among which may be cited: *People* v. *Donnolly,* 143 Cal. 398 [77 Pac. 177]; *People* v. *Eldridge,* 147 Cal.

782 [82 Pac. 442]; *People* v. *Lawrence,* 143 Cal. 148 [68 L. R. A. 193, 76 Pac. 893].

[6] But it is urged that the instruction is erroneous in that under the terms of section 182 of the Penal Code a conspiracy to commit a crime is made a criminal offense; and from which it is argued that the fact that such conspiracy existed could be shown only in an action brought under that section; and specifically, that evidence of its existence could not be introduced in an action against a defendant charged with the offense of obtaining money by false pretenses, for the reason that evidence as to the existence of a conspiracy necessarily involves facts showing the commission of a crime different from that with which defendant was charged in the information and upon which he was being tried. The authorities are not harmonious as to whether or not in circumstances such as are here presented a merger is effected as to the offense of conspiracy to commit a crime and the completed act contemplated by the conspiracy; nor is it deemed necessary to a decision of the point involved that consideration be given to the question of possible merger of the two offenses. Even where no relationship exists as between two offenses, if the offered evidence be pertinent to the proof of the offense charged, it is admissible. (*People* v. *Sanders,* 114 Cal. 230 [46 Pac. 153]; *People* v. *Argentos,* 156 Cal. 725 [106 Pac. 65]; *People* v. *Cook,* 148 Cal. 341 [83 Pac. 43]; *People* v. *Ebanks,* 117 Cal. 663 [40 L. R. A. 269, 49 Pac. 1049]; *People* v. *Walters,* 98 Cal. 141 [32 Pac. 864]; *People* v. *McPherson,* 6 Cal. App. 270 [91 Pac. 1098]; *People* v. *Rowland,* 12 Cal. App. 19 [106 Pac. 428]; *People* v. *Tomalty,* 14 Cal. App. 234 [111 Pac. 513]; *People* v. *Kizer,* 22 Cal. App. 15 [133 Pac. 516, 521, 134 Pac. 346]; *People* v. *Klopfer,* 61 Cal. App. 291 [214 Pac. 878].)

Viewed in the light that there was no merger of the two offenses, while the evidence may have tended to prove the crime of conspiracy, it also tended to prove that the defendants were guilty of the crime of obtaining money by false pretenses; and in such circumstances, as is said in the case of *People* v. *Sanders,* 114 Cal. 230 [46 Pac. 157], "the law will not thwart justice by excluding that evidence, simply because it involves the commission of another crime." If it may be considered that the consummation of the act

which the conspiracy was initiated to perform constituted a merger of the crime of conspiracy with the crime of obtaining money by false pretenses, so that the defendants, if guilty of the commission of any offense, were guilty of but the offense included within the completed act, and consequently that no prosecution could be predicated ·upon the crime of conspiracy, it would necessarily follow that no error was committed in the reception of evidence relating to the alleged conspiracy, nor in the giving of instructions to the jury relating thereto.

[7] Appellants also specify prejudicial error in that at the trial, in a discussion among the judge and counsel for the respective parties, the judge said: "I cannot agree with you. The complaining witness testified that they both (defendants) came on the same errand, and both came together subsequently." It is claimed that anything occurring after the completed misrepresentation was no part of the *"corpus delicti,"* nor any "part of the *res gestae* of the pretense here complained of." A review of the testimony immediately preceding the making of the remark to which objection is made shows that it related to admissions and confessions of guilt made by both the defendants. The relevancy of the remark to the testimony of the witness is not readily apparent, but may be considered as a response to a part of the arguments of counsel for defendants in urging his objection to the admissibility of the evidence. That part of the remark of the court which referred to the fact that defendants "came together subsequently," was covered by the immediate statement made by the deputy district attorney who was in charge of the prosecution, wherein he said, "there is no testimony they came together subsequently in her house," which was at once followed by the judge stating, "it don't have to be in her house." Considering the entire matter, we think the error (even assuming it to be such) is of no great importance, and certainly not grave enough to warrant a reversal of the case on that account.

No prejudicial error appearing in the record, it is ordered that the judgment and the order denying the motion for new trial be and the same are affirmed.

Conrey, P. J., and Curtis, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 31, 1924.

All the Justices concurred except Houser, J., *pro tem.*, who did not participate.