[Crim. No. 389. Fourth Appellate District.—October 6, 1939.]

THE PEOPLE, Respondent, v. HARRY NEUMEN, Appellant.

Raymond E. Hodge for Appellant.

Earl Warren, Attorney-General, and L. G. Campbell, Deputy Attorney-General, for Respondent.

GRIFFIN, J.—Appellant was charged with the crime of murder. A verdict of manslaughter was returned by the jury. He now appeals from the judgment of conviction and from an order denying a new trial.

The only grounds of appeal urged by appellant are (1) that the verdict was contrary to the law and the evidence; (2) that the court misdirected the jury in matters of law.

Appellant was a bartender at the Klondike Bar, located in the city of San Bernardino. The decedent Guy Hough and another man described as somewhat crippled, came into the bar room in the late afternoon and sat down at the bar. They stayed a short time and then left, returning a little later. When the decedent returned the last time he was intoxicated and soon became noisy. The appellant was behind the bar during this time. The decedent tried to purchase drinks from the appellant, but he was told that he had enough and that he, the decedent, had better "get out" and "get moving". Against the west wall near the entrance to the bar were two vending machines, both about head high or perhaps a little higher, and these machines were located about eight inches apart. After some little discussion between appellant and decedent across the bar, the appellant struck decedent in the face with his right hand in which he held a towel that was described as "standing in the air out from his hand". Decedent staggered toward the machines above described and fell or bumped into both of them. Decedent then turned around and started in the direction of the appellant, who was then standing near an opening between the "on sale" and "off sale" bars. Appellant claims that on his way to the north end of the room he picked up a black-jack which was hanging on a rail just under the end of the bar. One witness testified that appellant then struck decedent with a towel in his hand on two occasions; that after the first blow decedent staggered backward for a few steps, then returned to the place where appellant was standing, when he was struck again with the towel in appellant's hand; that decedent at that time fell against the bar and then to the floor. One other witness testified that after the first altercation above mentioned, appellant came out at the

end of the bar and struck decedent only once; that he then fell to the floor; that at that time he saw an instrument in appellant's hand described as "something brown, like a sap" and that thereafter decedent was dragged to the back room of the bar in an unconscious condition by appellant, where he subsequently died.

The autopsy surgeon testified that he found bruises on both sides of the forehead and abrasions; that the largest of those was perhaps three-fourths of an inch across; that he found that there was a bruise that was somewhat depressed, dented inward on the left cheek about midway between the ear and the corner of the eye; that the indentation was from one-eighth to one-fourth of an inch and its length a little over an inch and the width about one-third of an inch; that there were some bruises on the left ear but the skin was not broken; that there was a cut which did not go completely through the skin, about three-fourths of an inch in length, just below the angle of the jaw and that there was a cut a little over an inch long in a half moon shape over the left mastoid. The doctor also testified that there was a hemorrhage and that its source was apparently in the floor of the brain; that the hemorrhage "arose from some injury to the blood vessels along the base of the brain" and that "it would seem that the man had received some blows on his head which accounted for the hemorrhage".

Appellant admits picking up the black-jack at the end of the bar but denies using it in any manner and argues that decedent must have struck the cigarette and digger vending machines and that it was from these injuries or some unknown cause that death ensued. The autopsy surgeon testified that in his opinion the black-jack received in evidence could have caused some of the bruises on decedent's head and that a single fall against the vending machines would not cause all of the bruises pictured because the injuries were too widely distributed.

Appellant contends that there are two *reasonable* deductions that could have been drawn from the evidence: (1) "that the defendant did strike the decedent either with his fist or with a black-jack or both, and that one or both of these blows caused the bursting of the blood vessel which resulted in the decedent's death"; or (2) "that the decedent in his drunken condition simply lost his balance and fell,

first against the cigarette and digging machines and later against the bar and floor, causing an injury to the blood vessel which brought about a hemorrhage and later death, and that under such a situation the jury was compelled to adopt the deduction looking toward the innocence of the defendant.

In answering this argument it is interesting to note in addition to the general instruction given on the doctrine of reasonable doubt and the presumption of innocence, appellant offered and the court gave the following instruction:

"You are instructed that if the facts and circumstances of this case can, by any reasonable construction, be explained or construed consistently with the innocence of the defendant, it is your duty to so construe; and if the facts and circumstances in evidence in this case can reasonably be construed as raising a reasonable doubt as to the defendant's guilt, it is your duty to so construe them; and if the facts and circumstances of this case are susceptible of two interpretations—one interpretation looking toward the guilt of the defendant, and the other interpretation looking toward the innocence of the defendant—it is your duty to give these facts and circumstances in this case the interpretation which makes for the innocence of the defendant, rather than to adopt the one looking toward his guilt, and find the defendant not guilty."

Appellate courts are not authorized to reverse a judgment of conviction because of conflicts in the testimony, or because of inconsistencies or disparities in the testimony of any one witness, or because of conflicts between the testimony of different witnesses or because the testimony is susceptible of two reasonable inferences, one looking to the guilt of the defendant and the other to his innocence. The mere fact that there is a conflict in the evidence does not give rise to a reasonable doubt of defendant's guilt as a matter of law. On the contrary, the rule is that the verdict or finding of the jury is conclusive upon appeal, where the evidence is reasonably susceptible of different inferences, or where the evidence is in substantial conflict. (*People* v. *Daniels,* 70 Cal. 521 [11 Pac. 655]; *People* v. *Ah Gee,* 37 Cal. App. 1, 7 [174 Pac. 371]; *People* v. *Dunne,* 80 Cal. 34 [21 Pac. 1130]; *People* v. *Durrant,* 116 Cal. 179 [48 Pac. 75]; *People* v. *Lewis,* 141 Cal. 543 [75 Pac. 189]; *People* v. *Keyes,* 178 Cal. 794

[175 Pac. 6]; *People* v. *Mooney,* 177 Cal. 642 [171 Pac. 690]; *People* v. *Hines,* 5 Cal. App. 122 [89 Pac. 858].)

In view of the law and the facts related from the evidence presented, the finding of the jury cannot be disturbed.

The next point raised involves the instructions of the court. There was evidence introduced by the appellant of his good character in respect to peace and quiet. In this connection the court gave the prosecution's requested instruction.

"The defendant has introduced evidence before you tending to show his good character for peace and quiet. If, in the present case, the good character of the defendant for these qualities is proven to your satisfaction, then such fact should be kept in view by you in all your deliberations, and it is to be considered by you in connection with all the other facts and circumstances in the case, and if, after a consideration of all the facts in the case, including that bearing upon the good character of the defendant, you believe and find, beyond a reasonable doubt, that the defendant is guilty, then I charge you that it is your duty to convict him, notwithstanding his good character."

The appellant offered the following instruction which was refused by the court:

"The court instructs the jury that if you find from the evidence that the defendant be a man of good character in the traits involved, to wit: for peace and quiet, such good character may be sufficient to create a reasonable doubt of his guilt, although no such doubt would have existed, but for such good character of the defendant; for the good character of the defendant when established, is itself a fact in the case, and a circumstance tending in greater or lesser degree to establish his innocence and it must not be put aside by you in order to ascertain if the other facts and circumstances considered by themselves do not establish his guilt beyond a reasonable doubt; for evidence of good character is evidence relevant to the question of guilty or not guilty, and it is to be considered by you in connection with all the facts and circumstances of the case.

"One object in laying it before you is to induce you to believe in the improbability that a person of good character should have conducted himself as alleged, and that there is some mistake or misapprehension in the evidence on the part

of the prosecution, and you must take it into consideration, for a person of good character is less likely to commit a crime than a person of bad character.''

Appellant contends that the court should have given the instruction offered and refused and should have added to it only the latter part of the one given, citing *People* v. *Doggett,* 62 Cal. 27. The appellant had the right to have the jury instructed that in determining whether or not he was guilty beyond a reasonable doubt, his *good reputation* as to traits involved in the charge, if proved, should be weighed as any other fact established, and that it might be sufficient to create a reasonable doubt, as to his guilt. (*People* v. *Bell,* 49 Cal. 485, 489; *People* v. *Raina,* 45 Cal. 292; *People* v. *Ashe,* 44 Cal. 288, 291.)

Portions of the instruction offered and refused covering this subject may well have been given to more adequately express and emphasize the object and purpose of laying reputation evidence of the character of appellant before the jury. However, we are convinced, under the circumstances of this case, that no prejudicial error arose by reason of the failure to give the proffered instruction, in view of the fact that the jury was instructed on the subject as indicated, and the further fact that the overwhelming evidence of appellant's guilt was most clear and convincing. (Art. VI, sec. 4½ of the Constitution.) The jurors were informed that if they were satisfied of the good character of the appellant for peace and quiet, then such fact should be kept in view in their deliberations and should be considered by them in connection with all the other facts and circumstances in the case. We do not hesitate to say that there has been no miscarriage of justice by reason of the claimed error.

Similar complaint is made of the court's refusal to give the following instructions:

(1) ''I hereby instruct you that if you have any reasonable doubt as to what caused the death of Guy Hough, you should find the defendant not guilty.''

(2) ''You are hereby instructed that if you are unable to determine beyond a reasonable doubt that the defendant did some act that caused the death of Guy Hough, then in that event you should find the defendant not guilty.''

These instructions were sufficiently covered by the giving of the statutory definition of reasonable doubt in the lan-

guage of section 1096 of the Penal Code. In charging a jury, the court may read to the jury section 1096 of the Penal Code, and no further instruction on the subject of presumption of innocence or defining reasonable doubt need be given. (Sec. 1096a, Pen. Code.)

For the reasons expressed, the judgment and order are affirmed.

Barnard, P. J., and Marks, J., concurred.