[Crim. No. 390.   Third Appellate District.—November 6, 1917.]

THE PEOPLE, Respondent, v. AH WING, Appellant.

EVIDENCE—LEADING QUESTIONS—DISCRETION.—The court may in its discretion allow leading questions to be addressed to a witness, but the privilege should not be arbitrarily granted to one side and denied to the other.

CRIMINAL LAW—MURDER—EVIDENCE—MOVEMENTS OF DEFENDANT AFTER HOMICIDE.—In the prosecution of a Chinese for murder, it is not improper to permit the district attorney to show that the defendant after the homicide went toward the headquarters of a certain tong

society, since the inquiry related to a circumstance that might be legitimately construed as an effort of concealment, or as indicating the connection of the tong with the killing, thus furnishing a motive for the crime.

ID.—COMMENT OF COURT UPON IMPEACHING QUESTION—LACK OF PREJUDICE.—In such a trial, the remark by the court in ruling upon an objection raised to an impeaching question asked of a witness for the state that it could not see any conflict in the statement read to the witness and his testimony is not an invasion of the province of the jury.

ID.—EXPLANATION OF TESTIMONY—RIGHT OF WITNESS.—In such a trial, it was not error to permit an officer who testified that on the night of the shooting he saw near the scene of the homicide a certain person, upon his attention being called to his testimony at the preliminary examination wherein he stated that he did not see such person at that time, to explain on redirect examination his former testimony by stating that he did not talk to such person that night.

ID.—SELF-DEFENSE—EVIDENCE—BELIEF OF DEFENDANT.—In such a trial, where one important element in the theory of the defense was that defendant believed his life was in danger, it was proper for him to testify whether he believed he was in danger of death or great bodily harm.

ID.—CROSS-EXAMINATION OF WITNESS—CONDUCT OF DISTRICT ATTORNEY—LACK OF PREJUDICE.—In such an action, where the district attorney had cause to believe a witness was not telling the truth, he had the right to use every legal means within his power to vindicate his belief, and his examination, though unduly prolonged and unnecessarily persistent as to unimportant circumstances, was not prejudicial, as tending to discredit the witness.

ID.—AGE OF DEFENDANT—CONDUCT OF DISTRICT ATTORNEY WITHOUT PREJUDICE.—In such a trial, where defendant testified in chief that he was eighteen years old, the district attorney was not guilty of misconduct in seeking to compel an admission that the defendant was twenty-eight years old, or in questioning him concerning his identification papers.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. John Hancock, Judge Presiding.

The facts are stated in the opinion of the court.

A. H. Ashley, Gordon A. Stewart, and Hugh J. Tye, for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Appellant was charged with one Henry Lee of the crime of murder, and on a separate trial was convicted of murder of the second degree and sentenced to life imprisonment. His associate was convicted of murder of the first degree and his conviction recently affirmed by this court. (*People v. Lee,* 34 Cal. App. 702, [168 Pac. 694].) It is sufficient to refer to said decision for a general statement of the case, and it may be further said that therein were considered some of the important points urged herein for a reversal. However, it is proper to state that, speaking generally, the record here presents the defendant in a somewhat less odious light than Henry Lee was exhibited in the other record, though by this it is not meant to say that the evidence is insufficient to warrant the verdict. Indeed, there could be found ample justification for a conviction of the higher offense, but there seems herein more plausibility in the contention that the defendant acted in self-defense than in the other case, and more reason in his claim that certain alleged errors resulted to his prejudice. As to these, however, it is manifest that many of the rulings complained of cannot be successfully assailed, and some of them are so inconsequential as to merit no specific attention. The others that we deem worthy of notice, we proceed briefly to consider.

The rule is too well settled to be now questioned that the court may in its discretion allow leading questions to be addressed to a witness. It is true that the privilege should not be arbitrarily granted to one side and denied to the other. And it seems that the prosecution herein was somewhat more favored in that respect than the defendant, but we cannot say that any prejudice resulted therefrom.

As to the photographic exhibits, what was said in the Lee case will apply here and we need add nothing further.

The testimony as to the flight of his codefendant raises a more serious question in this case than in the other. If it appeared without substantial conflict that appellant fled, the cases in that respect would be similar, but Wing denied that he fled, his statement being that after the shooting he walked toward the headquarters of the Suey Sing tong. Thus, under the authorities cited, there is some force in the claim that the ruling was prejudicially erroneous.

We can see nothing improper in the action of the court in permitting the district attorney to show that the defendant

after the homicide went toward said headquarters. Certainly, the inquiry related to a circumstance in the case that might be legitimately construed as an effort to conceal himself, or as indicating the connection of said tong with the killing, and thus furnish a motive for the crime. At any rate, the fact was fully covered by the testimony of the defendant himself, and there seems to be no doubt that he did actually go in that direction, and while apparently not very important, the circumstance furnished some ground, however slight, for the support of respondent's contention as to the tong's connection with the crime.

On cross-examination the attention of Police Officer Ingalls was called to a purported statement made by him at the preliminary examination as to the point at which he first saw deceased and the defendants at the time of the shooting. An objection was made by the district attorney on the ground that there was no contradiction therein, and the court said: "The court cannot see any conflict in the testimony as read to him and the testimony as now given by the witness." This is claimed to have been an invasion of the province of the jury. But we think the question amounted to an impeaching question, and the district attorney had the right to make such objection. The court was therefore called upon to determine whether there appeared to be any conflict. In sustaining the objection it was necessarily determined that there was no conflict, and the court added nothing to the force or effect of the ruling by making said statement. An examination of the record convinces us that the ruling was correct, and therefore we think there is nothing in the circumstance warranting criticism.

Officer Fredericks testified that on the night of the shooting he saw near the scene of the homicide one Barthold, and then his attention was called to his testimony at the preliminary examination that he did not see said Barthold at that time and that he first saw him the next day. On redirect examination he was permitted to explain that he meant by his former testimony that he did not talk with Barthold until the next day. This was entirely proper. It would be a very harsh and unjust rule that closed the mouth of a witness to any explanation of apparently conflicting and irreconcilable statements. It is always permissible to make an explanation, but the force or effect of it is, of course, for the jury. Section 2052 of the Code of Civil Procedure recognizes the right of the witness to explain, which right no appellate court, we think, would deny.

We find nothing seriously objectionable in the method pursued by the district attorney in the examination of the witness Barthold, although in that connection bitter criticism against that officer is directed by appellant. Some of the questions were somewhat suggestive, but we cannot say that the purpose was otherwise than to elicit the truth or that such result was not accomplished.

One Mah Guey was an important witness for the defendant, and complaint is made of his cross-examination, appellant going so far as to state that it constitutes "simply a long prejudicial argument to the jury tending to throw distrust upon Mah Guey, and thereby cast doubt upon all of the Chinese witnesses." We do not so regard it. In the light of calm reflection, doubtless some reason is disclosed for criticism of the cross-examination, but we do not think that thereby any serious error was committed. No doubt the district attorney believed that the witness was not telling the truth, and he had the right to use every legal means within his power to vindicate his belief. The examination seems to have been unduly prolonged and the district attorney unnecessarily persistent as to unimportant circumstances, and some of the questions should not have been propounded at all, but we cannot say that by anything said or done while the witness was on the stand appellant's cause was illegally impaired. Indeed, as far as concerns the witness himself, he seems to have emerged from the avalanche of questions with his credit unimpaired and his original story remaining unshaken for what it was worth. As to some matters, covering which he was interrogated and which may not have been within the proper range of cross-examination, we may say further that they were established by other witnesses beyond question, and hence they furnish no just ground for complaint.

While one Hong Jo was on the stand appellant's counsel sought to show by the interpreter that in using an expression "angry" the witness had used a Chinese word indicating an appearance of the face. The court would not permit it, but whether the court was right or wrong, it is entirely apparent from the testimony of the witness that such was his meaning. In other words, it clearly appears that he referred to the appearance of the face.

We cannot say that the district attorney was guilty of improper conduct in asking Lee Wah the following questions:

"Isn't it a fact that the Suey Sings have threatened there will be a tong war here if the defendant is convicted?" and "Isn't it a fact that you are testifying in this case the way you have because you know that the Suey Sings have threatened a tong war in case the defendant is convicted?" We cannot assume that the district attorney did not believe such fact existed or that the witness had knowledge of it, or that the knowledge of such threat affected his testimony. We must assume, on the contrary, that the district attorney acted in good faith, believing that he had the legal right to ask the questions, although it seems the court sustained an objection to them.

It is claimed that appellant was not allowed to testify as to the condition of his own mind at the time of the shooting. One important element in his theory of self-defense was that he believed his life was in danger, and his mental condition in that respect was, of course, a matter peculiarly within his own knowledge. While the jury would not be compelled to accept his statement, it would seem entirely proper for him to testify whether he actually did believe that he was in danger of death or great bodily harm. (*People* v. *Overacker*, 15 Cal. App. 620, [115 Pac. 756]; *Barnhart* v. *Fulkerth*, 93 Cal. 497, [29 Pac. 50]; *Kyle* v. *Craig*, 125 Cal. 107, [57 Pac. 791].) The particular question to which appellant refers is as follows: "Did you at the time believe or not believe that it was either your life or his life?" But it is apparent that the question was fully covered by other questions and answers, as the following from the record will show: "Why did you shoot Lee Yow Juck? A. He threatened to kill me in the tan game. Had it not been that Mah Guey took the pistol from him, he would have killed me in the tan game, and then he threatened to go and get another pistol and kill me, so I was afraid of him. . . . Q. Now, why did you continue shooting as Lee Yow Juck went across the street? A. His hand was still in his pocket, and I was afraid he might kill me." He could have added nothing to the force of the foregoing by stating that he believed it was either his "life" or the "life" of the deceased. There was a similar situation in the Overacker case, wherein it was held that the error was cured.

Appellant is very much dissatisfied with his cross-examination. One circumstance that he especially emphasizes relates to his age. He had testified in chief that he was eighteen years old. Naturally this was important, as the average juror would

be inclined to treat a minor more leniently than an adult charged with the same crime. The district attorney apparently believed that the defendant was much older than that— even twenty-eight years old—and he sought earnestly to compel such admission on the part of appellant. We cannot see that he overstepped the bounds of legal propriety in the matter. We think it not censurable that he asked appellant in reference to his identification papers. The production of them manifestly might have been of great significance in the solution of this question. It does, however, appear, we think, that some improper questions were asked by the district attorney, but nothing of a prejudicial character.

Appellant with some warmth complains because the court, on motion of the district attorney, struck out as not responsive the answer to the following question: "The first time you shot him, did you intend to kill him?" The answer was: "I was protecting my own life; I was afraid." It is apparent that it was not a direct answer to the question. In fact the answer assigned a reason for what he did rather than the purpose he had in view. The question was not objected to, and indeed it was proper, and the court was not in error in insisting upon an answer to it. It may be further said that as far as the reason thereby given is concerned, appellant gave it without objection in answer to other questions. Of course, if the witness had answered the question, he would have been permitted to explain it. Indeed, the court so advised him. He chose, however, to say that he could not answer in that way.

Appellant contends that the court was prejudiced against him as evidenced by the sentence of life imprisonment meted out to him. We must assume that the court believed he deserved this sentence, and that it was not the result of prejudice. At any rate, it would be no evidence of the existence of any prejudice prior to the conviction of the defendant, and a subsequently acquired prejudice could not have affected the fairness of the trial. In fact, there seems to be no ground for the contention that the court was animated by any other desire than to do exact justice as between the people and the defendant, and since the penalty imposed was within that provided for the crime of murder in the second degree, there is nothing in said circumstance demanding further notice.

Finally, taking a general view of the case, we may conclude in a few words. Some errors were probably committed during

the trial, principally in the ruling upon testimony, but there was no invasion of the fundamental rights of the defendant. In our opinion he was justly convicted. To one at all familiar with the Chinese character and the method of Chinese murderers, the story of the conduct of the deceased as told by appellant would seem highly improbable. But granting it credit, then it appears substantially without conflict that appellant was not justified in what he did. The evidence of his guilt is quite clear from the testimony of white witnesses. And conceding that there was evidence of justification for the first shot fired by appellant, it appears from his own statements that he followed and shot the deceased when by no fair understanding of the situation or twist of construction of the law could it be said that he had reason to believe that his life was in danger, or that he acted in self-defense.

If section 4½, article VI, of the constitution is not to be invoked here, then we should not seek to follow it in any case.

The judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.