(No. 16174.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GEORGE W. DABNEY, Plaintiff in Error.

*Opinion filed December 16, 1924—Rehearing denied Feb. 6, 1925*

1. CRIMINAL LAW—*when, only, may conviction be reversed on evidence.* A reviewing court will not set aside a conviction as unjustified by the evidence unless the verdict is so palpably against the weight of the evidence as to indicate it was based upon passion or prejudice.

2. SAME—*what evidence is competent to fix date of threat although it refers to another offense.* The fact that testimony tends to prove the commission of another offense does not render it incompetent if it is competent for any purpose in the case, and where a defendant is charged with assault with intent to murder a police officer, a witness may testify as to a threat which he heard the defendant make that he would "get even," and may fix the date of the threat as being some time after the defendant had been arrested by the officer for a previous offense.

3. SAME—*what evidence is competent as res gestæ.* In a prosecution for assault with intent to murder a police officer, witnesses may testify, as part of the *res gestæ,* that a bystander was struck by the bullet when the shot was fired which constituted the assault.

4. SAME—*what is improper argument by State's attorney—reversal.* The State's attorney has no right to inject into the case, by argument, any inference that the public are anxiously awaiting a verdict of guilty, but such improper argument will not cause a reversal where the evidence clearly shows the guilt of defendant.

5. SAME—*applications for a new trial because of new evidence are not favored—burden of proof.* Applications for new trial on the ground of newly discovered evidence are not looked upon with favor by the courts and are subjected to close scrutiny, and the burden is on the applicant to rebut the presumption that the verdict is correct and to show that there has been due diligence.

6. SAME—*what new evidence will warrant a new trial.* Newly discovered evidence, to warrant a new trial, must be of such conclusive character that it will probably change the result; it must have been discovered since the trial; it must be such as could not have been discovered before the trial by the exercise of due diligence; it must be material to the issue; and it must not be merely cumulative to the evidence offered on the trial.

WRIT OF ERROR to the Circuit Court of Mason county; the Hon. GUY R. WILLIAMS, Judge, presiding.

GEORGE W. SPRENGER, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, SCOTT W. LUCAS, State's Attorney, and JAMES B. SEARCY, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was indicted in the circuit court of Mason county upon the charge of assault with intent to murder Thomas Cavanaugh, a police officer in Mason City. He was found guilty. Motion for a new trial was made, urging, among other grounds, discovery of new evidence. This motion was denied and plaintiff in error was sentenced on the verdict. He brings the cause here for review, urging, first, that the verdict is not sustained by the evidence; second, that it was error to deny the motion for new trial on the ground of newly discovered evidence; third, error in the admission of evidence; and fourth, prejudicial and inflammatory argument on the part of the State's attorney.

The record shows that on the evening of December 2, 1923, plaintiff in error, who is a farmer, drove into Mason

315—21

City from his residence, five miles northwest of that place. Cavanaugh had gone on duty at six o'clock and about seven o'clock entered the restaurant of Doc Ewers, located on Tonica street, in said city. Tonica street extends north and south and is intersected north of the Ewers restaurant by Chestnut street, extending east and west. As Cavanaugh entered Ewers' restaurant he passed plaintiff in error, who was standing in front of the place talking to a man named Dobson. It appears from the State's testimony that shortly after Cavanaugh entered the restaurant two of the State's witnesses, Frank Hubbard, a deputy sheriff, and Gus Sievers, a State patrol officer, who were standing near the front of the restaurant, saw plaintiff in error looking into the restaurant and holding a pistol in his hand; that he was pointing it toward the restaurant and had it out of his pocket for two or three minutes. The State's witness Clarence Adkens testified that he was in front of the restaurant at that time and saw plaintiff in error flash the gun and heard him say, "I will get even." It appears that someone notified Cavanaugh that plaintiff in error had a gun, and a short time thereafter, while Cavanaugh was walking his beat, he came upon plaintiff in error standing in front of the Farmers' State Bank, on Chestnut street. This bank is located one-half block west of the intersection of Chestnut street and Tonica street, on the south side of Chestnut street. It appears that the street there was lighted with electric lights known as cluster ornamental lights. Plaintiff in error was talking to Jason Allen. According to the State's evidence, Cavanaugh walked up to him and said, "Have you got a gun on you, George?" whereupon plaintiff in error stepped back and replied, "No," but drew a 45-calibre Colt automatic army pistol from his right hip pocket and pressed the muzzle of it against Cavanaugh's side. Cavanaugh grabbed the pistol and attempted to push the muzzle away from his body, but before he could do so the gun was discharged and the bullet penetrated the left

side of his body at about the fifth or sixth rib and passing out lodged in the chest of a boy named Bernard Stone, who at that time was some thirty-five or forty feet away. Cavanaugh thereupon drew his pistol and attempted to shoot plaintiff in error, at the same time holding onto the latter's pistol with his left hand. Cavanaugh's pistol snapped but did not discharge, and he therefore returned it to his pocket and taking hold of plaintiff in error's gun with his right hand also, attempted to wrest it from him. In the struggle that ensued Cavanaugh was struck over the head a number of times and received scalp wounds. Hubbard and Sievers, hearing the pistol shot, came to the scene and plaintiff in error was arrested and taken to the city jail. On being searched a clip containing additional cartridges was found in his possession.

Cavanaugh's testimony concerning the occurrence in front of the bank is corroborated by the testimony of Carl Tohlen, a boy of fourteen years, who testified that he was directly across the street from the bank when the encounter took place between Cavanaugh and plaintiff in error. He testified that as Cavanaugh approached plaintiff in error he had nothing in his hand; that Cavanaugh said something; that plaintiff in error stepped back a step or two and pulled out a gun; that Cavanaugh closed in on him and plaintiff in error shot.

Graham Spangler, a witness for the People, testified that he was in the alleyway next to the Farmers' State Bank, near the corner, when he saw Cavanaugh going west down Chestnut street; that as the witness got to the corner of the alley and the street he saw plaintiff in error and the police officer scuffling over a gun; that he was about ten or fifteen feet away; that Cavanaugh did not have anything in his hand when he walked across the alley; that he heard the shot fired, and Bernard Stone, who was with him, shouted: "Hey, mister! I am shot!" Bernard Stone,

a boy of fourteen years, testified to substantially the same facts as those given by Spangler.

Dr. Don Deal described the wound in Stone's chest and testified that he removed a bullet from the wound, which he thought to be from a 45-calibre gun. The bullet was introduced in evidence without objection, and there is no contention that it was not the bullet fired from plaintiff in error's gun.

Plaintiff in error took the stand and testified that he did not draw his revolver until Cavanaugh tried to shoot him. He denied that he had ever in any way threatened Cavanaugh, but testified that when Cavanaugh approached him near the bank he (Cavanaugh) drew his gun and said, "George, you got a gun on you?" and grabbed plaintiff in error by the arm, saying, "Don't get smart with me or I will blow your head off," and snapped his gun at plaintiff in error but that it did not fire. Plaintiff in error testified that he then stepped back and that Cavanaugh hit him over the head with his revolver and knocked him to his knees; that when he got up he took his gun out of his pocket and hit Cavanaugh with it; that in the scuffle that took place Cavanaugh struck plaintiff in error's pistol with his own and it was discharged; that he did not fire the gun at all. Jason Allen testified on behalf of plaintiff in error and corroborated the latter's statement up to the point where he testified that Cavanaugh was the first to draw his gun, the witness then stating that he left because he was afraid he would be shot.

Plaintiff in error also claims that he did not draw his gun in front of Ewers' restaurant but that he had in his hand at that time a nickel-plated flash-light. Witnesses Lloyd Cantrell and Gordon Andrews, called in his behalf, testified that plaintiff in error showed them a flash-light in front of Ewers' restaurant that night. In rebuttal it is shown by testimony of the sheriff of Mason county, W. F. Close, that the next morning he searched plaintiff in error

in the city jail and found no flash-light on him. Hubbard and Sievers both testified that he had no flash-light in his possession when he was searched on the night of December 2 in the city lockup.

The questions as to the manner in which the shot was fired and as to who caused it to be fired were questions of fact for the jury. A reviewing court will not set aside a conviction as unjustified by the evidence unless the verdict is so palpably against the weight of the evidence as to indicate it was based on passion or prejudice. *People* v. *Jones,* 310 Ill. 275; *People* v. *Carrico,* id. 543.

The State sought to show by the witness Leslie Elmore that a conversation had taken place between the witness and plaintiff in error in which the latter uttered threats against Cavanaugh. The witness was unable to fix the time, and he was asked if it was immediately following the arrest of plaintiff in error in the month of June, 1923. This was objected to, and the court permitted the witness to answer for the purpose of fixing the date of the conversation, if there was such. The witness answered that he remembered the time plaintiff in error was in jail, although he could not recall the date. Counsel for plaintiff in error moved that the answer in regard to plaintiff in error being in jail be stricken as not responsive. This motion was overruled. The witness stated it was along in the summer of 1923; that when he took plaintiff in error home he was under the influence of whisky and said, "I will get even." On motion of counsel for plaintiff in error the volunteer statement of the witness that plaintiff in error was under the influence of whisky was stricken. Later the court sustained a motion to strike all of the testimony of the witness for the reason that it did not show that the threat referred to Cavanaugh and admonished the jury to give no consideration to the statement. The objection is now made that although stricken on motion this evidence was prejudicial and was error in that it showed plaintiff in error had

been previously arrested and intoxicated; that such was incompetent evidence of an offense not charged and prejudicial to the interests of plaintiff in error. It is answered that the question and answer objected to were for the purpose of fixing the time when the conversation occurred; that the State expected to show by the witness that the threat was against Cavanaugh, and that the fact the answer disclosed a previous arrest did not render it incompetent. From the testimony of the witness it is evident that he was testifying concerning a conversation which he had with plaintiff in error about Cavanaugh at the time when plaintiff in error was arrested, and it is a fair inference that plaintiff in error's expression, "I will get even," referred to his arrest by Cavanaugh. The statement that he was intoxicated was a voluntary statement of the witness and properly stricken. His testimony, however, concerning plaintiff in error's arrest was for the purpose of fixing the time, as best the witness could, when the conversation occurred, the witness having stated that he did not know the exact date. Proof of threats was competent as tending to show ill-feeling towards the officer on plaintiff in error's part. The fact that testimony tends to prove the commission of another offense does not render such evidence incompetent if it is competent for any purpose in the case. (*People* v. *McGuirk,* 312 Ill. 257; *People* v. *Meisner,* 311 id. 40; *People* v. *Kircher,* 309 id. 500; *People* v. *Hall,* 308 id. 198.) As we have seen, the court, on motion, struck out the testimony of the witness. We are of the opinion that that ruling was one more favorable to plaintiff in error than he was entitled to have.

It is also contended that the testimony of Spangler and Stone to the effect that the latter was struck by the bullet was incompetent and prejudicial. We do not think so. It clearly concerned a part of the *res gestæ.*

It is urged that the judgment in this case should be reversed because inflammatory statements were made by the

State's attorney in argument.  Particular attention is called
to the following statement:  "I say to you men in all sin-
cerity, in all frankness and honor, that the honor and the
morality of Mason county is at stake in this one case; and
I want to say to you gentlemen of the jury that there are
going to be thousands of people in this county that are
anxiously waiting for a verdict of your unbiased judgment
on this evidence, of guilty."  This statement was objected
to and the objection was promptly sustained, and the court
instructed the jury that the statement was improper and
that they should not consider it.  The statement was clearly
error and in a case close on the facts would be sufficient to
reverse the judgment.  The jury were required to try the
case according to the law and the evidence, and what the
people of the community might want in the matter had noth-
ing to do with their duty in the case.  The State's attorney
had no right to inject into the case, by argument, any in-
ference that the public were anxiously awaiting a verdict of
guilty.  We are of the opinion, however, that in this case
it cannot be said that but for such statement the verdict
might have been otherwise.  The testimony presented in the
case shows the guilt of plaintiff in error, and this error is
not sufficient to cause a reversal of the judgment.

It is also urged that it was error to deny the motion
for a new trial on the ground of newly discovered evidence.
In connection with this motion counsel for plaintiff in error
filed the affidavit of Elliott R. Bale, who states that he was
near by and saw the encounter.  A reading of his affidavit,
however, discloses that his testimony would be cumulative,
merely, in that it would tend to corroborate plaintiff in
error and the witness Jason Allen.  Applications for new
trial on the ground of newly discovered evidence are not
looked upon with favor by courts but such applications are
to be subjected to close scrutiny.  The burden is on the
applicant to rebut the presumption that the verdict is cor-
rect and to show that there has been no lack of due diligence.

(*People* v. *LeMorte*, 289 Ill. 11.)  The evidence must fulfill the following requirements:  First, it must appear to be of such conclusive character that it will probably change the result if a new trial is granted;  second, it must have been discovered since the trial;  third, it must be such as could not have been discovered before the trial by the exercise of due diligence;  fourth, it must be material to the issue;  and fifth, it must not be merely cumulative to the evidence offered on the trial.  *People* v. *Pennell*, (*ante*, p. 124;)  *People* v. *LeMorte, supra; People* v. *Williams*, 242 Ill. 197;  *Henry* v. *People*, 198 id. 162.

There is no reversible error in the record.  The trial court used very great care in keeping out error.  Plaintiff in error has had a fair trial.

The judgment will be affirmed.  *Judgment affirmed.*