(No. 5844. December 3, 1932.)

STATE, Respondent, v. WILLIAM FOX and J. L. Mc-
CARROLL, Appellants.

[16 Pac. (2d) 663.]

Holden & Clark, Charles W. Sandles and F. A. Miller, for Appellants.

Fred J. Babcock, Attorney General, and Z. Reed Millar, Assistant Attorney General, for Respondent.

GIVENS, J.—On the evening of July 24, 1931, Del Ray Huff and Lee Clark, formerly undercover men for the national prohibition department, Gerald Clark, brother of Lee Clark, and George McGee, were together at Newdale, and there is evidence they were drinking intoxicating liquor. Huff called appellant Fox at his residence in Idaho Falls without securing him, but the appellant McCarroll advised over the telephone that he would have Fox call, which he did from a pool-hall. In the telephone conversation between Huff and Fox, Huff gave his name as "Chet Baird," and told Fox if he would come to Newdale he thought he could "do him some good." Evidently this conversation had reference to a criminal charge of violation of the liquor laws which had previously been filed against Fox, Lee Clark having made the affidavit for the search-warrant in connection therewith. Fox at first said he would not go, but later told Huff ("Chet Baird") over the telephone that he would. Fox and McCarroll then each armed with a pistol, in company with defendant Fuller, who was acquitted at the trial, left for Newdale, some 65 miles from Idaho Falls.

There is a conflict in the evidence as to whether Fuller was armed; some witnesses testified for the state that he was, and that he had a rifle in his hands at the time of the fatal shooting. Appellants and Fuller deny this. The defendants reached Newdale, a small country village, about 1 o'clock on the morning of the 25th, and driving along what was designated as Main Street, encountered McGee, who came up to the car and first said his name was Chet Baird, and asked for Fox. While this conversation was going on, defendants saw some parties apparently hiding and peering from a near by building. McCarroll started toward this building, but returned, and McGee entered the automobile and told them to drive out of town and he would tell them what it was all about. They drove out some distance from Newdale, but could get no information from McGee. There is a dispute as to what conversation took place, McGee stating in effect that they told him he had better tell or they would do away with him, and that they drew their guns on him. The defendants denied this. They returned to and drove through Newdale, and outside of town, but nothing more was learned from McGee, so they again returned to Newdale and stopped the car near a service station. Though there is some dispute as to the relative positions of the Clarks and Huff, it appears that Huff approached the car from one side, Lee Clark from the other, and Gerald Clark from the rear. Huff was called to the running-board by Fox, and they had some conversation. Lee Clark was approaching from the side on which McCarroll was sitting, McGee being between Fox and McCarroll in the front seat of the coupé and Fuller in the rear, or rumble seat. McCarroll advised Lee Clark to stand back, which he did, and Fox started to drive the car away slowly after Lee Clark called: "Drive up a ways, Dad is around the corner," or "Here comes Dad." ("Dad" referred to the father of the Clarks, who was the marshal in Newdale.) As he did so, defendants claim that Gerald Clark ran towards the car and told McCarroll to stop or he would blast him and shoot it out with him. Clark, Huff and McGee claim he

said: "Stop, or I will bust you and have it out with you." The witnesses for the state said that defendant McCarroll shot first, it being conceded that he shot several times, killing Gerald Clark. The defendants contend that Gerald Clark shot first, and that McCarroll shot only in self-defense. Immediately after the shooting the three defendants, with McGee in the car between Fox and McCarroll, drove to Idaho Falls, where they called Newdale on the telephone and ascertained that Gerald Clark had been shot and taken to the hospital. The defendants then went to the sheriff's office at Idaho Falls, and advised as to what had taken place. This was early in the morning of the 25th. At that time the sheriff of Bonneville county and his deputy and one police officer, one of the attorneys for the defendants, and the defendants themselves, closely questioned McGee, and a little later in the morning the same procedure was pursued, when the sheriffs from Fremont and Madison counties and two more deputies were present.

From the record, the jury might reasonably have inferred that all of the officers and the defendants were attempting to secure answers from McGee which would assist in establishing a case of self-defense for defendants, which observation is pertinent in view of the fact that McGee gave as a reason for the discrepancies between his statements as such early morning meeting, and his testimony at the trial that he thought the officers and the defendants were all in together. McGee was only twenty-two years old, had recently come from California, and had been living with the Clarks. The defendants had been acquaintances, if not friends, for some time, and evidently Fox and McCarroll had been rather intimately acquainted. Fuller had been acquainted with Fox during the war, and had not been in Idaho Falls long before the killing. His former home had been in Minnesota.

Four empty shells which fit McCarroll's gun were picked up on the 25th, near where the defendants' car had been at the time of the shooting. There were no marks or bullet holes on the back of the car, or anywhere else so far as found, to indicate that Gerald Clark had shot at all. Neither

were any other empty shells found in the vicinity. There was some testimony to the effect that the Clarks, Huff and McGee called up Fox either for the reason that they wanted to secure a bribe from him in connection with the liquor prosecution in return for their failure to testify or appear, or to rob him of his car and money and escape. It was the contention of the state that a search-warrant previously issued as indicated above, at the instigation of Lee Clark, was the motive for the animosity entertained by McCarroll and Fox against the Clarks and Huff.

Aside from the above facts and the immediate incidents connected with the actual shooting, departure of the defendants from Newdale, the disputed speed and circuitous route by which they returned to Idaho Falls, and their conduct prior and subsequent to the catastrophe, the evidence leaves much to the imagination as to what really were the intentions and underlying motives and actuating impulses of the various parties in connection with the controversy.

The three defendants were charged with murder in the first degree. Fox and McCarroll were convicted and Fuller acquitted. The court instructed not only upon accomplices, but also in regard to conspiracy. Considering that there was evidence that at least the defendants Fox and McCarroll armed themselves, were willing to drive some sixty-odd miles in the middle of the night to Newdale, where the Clarks lived, without the record showing any particular reason therefor; that there was no mark on their car or anywhere else so far as found, to indicate that Gerald Clark or anyone else shot at them; the liquor charge and all the consequences and inferences following therefrom as to the defendants' and Lee Clark's participation therein, we cannot say that all of the facts and surrounding circumstances were not sufficient to justify as against the charge of the insufficiency of the evidence, the court in so instructing, or the jury in finding the defendants Fox and McCarroll guilty of murder in the first degree. The mental states of malice and intent, etc., being mere states of mind, are of course to be arrived at from the evidence. Self-defense was

a question of fact to be determined by the jury under the evidence. If the jury believed that Gerald Clark did not shoot; that he was unarmed, and there is evidence to this effect; that neither Huff nor Lee Clark were armed, and no contention was made that McGee was armed, or made any hostile move toward anybody; and that Fox and McCarroll were armed and possibly Fuller also; they were justified in concluding that there was such a concerted unanimity of thought on the part of the two defendants convicted, as to justify the jury's conclusion reflected in their verdict.

The numerous assignments of error will be considered in their order.

The first assignment is that the defendants should have been granted separate trials because different evidence was to be introduced as against the several defendants, some of which was not admissible against all of the defendants; that each defendant desired to be a witness for the other, and that different instructions applicable to the several individual defendants would be required.

The only two cases cited by appellants in support of this proposition (*Davis v. People,* 22 Colo. 1, 43 Pac. 122, and *Cook v. People,* 56 Colo. 477, 138 Pac. 756) were based upon a special statute which we do not have, and such authorities are therefore inapplicable herein. The mere fact that different evidence would be introduced against the several defendants does not require the granting of a separate trial, where the court admonishes the jury to confine its consideration of such evidence to the particular defendant against whom it was introduced, as the court did herein, both specifically at the time such evidence was introduced and also when all the instructions were given at the conclusion of the case. (*State v. McDaniels,* 27 N. M. 59, 196 Pac. 177; *State v. Clark,* 156 Wash. 47, 286 Pac. 69; *People v. Anderson,* 75 Cal. App. 365, 242 Pac. 906; *People v. Trotter,* 120 Cal. App. 54, 7 Pac. (2d) 731.)

That each defendant desired to be a witness for the other was no ground for a separate trial. (*State v. Allen,* 23 Ida. 772, 131 Pac. 1112.) Appellants contend that the defendant McCarroll was denied the benefit of the testi-

mony of Fox, but they do not show how he was deprived of his testimony because they were tried together. In neither event could one defendant compel another defendant to testify. (C. S., sec. 9131; *State v. Knudtson,* 11 Ida. 524, 83 Pac. 226.) The immunity granted by the fifth amendment to the Constitution of the United States, and sec. 13, art. 1, of the state Constitution would apply in either event. (*Ex parte Cohen,* 104 Cal. 524, 43 Am. St. 127, 38 Pac. 364, 26 L. R. A. 423; *Ex parte Clark,* 103 Cal. 352, 37 Pac. 230; *Counselman v. Hitchlock,* 142 U. S. 547, 12 Sup. Ct. 195, 35 L. ed. 1110.)

Under the statute the granting of a separate trial is in the discretion of the trial court, and no abuse is shown herein.

▉ Appellants complain of the admission of a search-warrant and affidavit for the same signed by Lee Clark for the search of the premises of defendant Fox, evidence concerning the same, and the opening statement relative thereto, by assignments Nos. 2, 3, 5, 6 and 7. At the time of the admission of this search-warrant and also later in his final instructions, the court advised the jury that it was to be considered only against defendant Fox. In *State v. Foyte,* 43 Ida. 459, 252 Pac. 673, there was no such admonitory instruction. This evidence was clearly admissible as against Fox as bearing on motive.

In *State v. McClurg,* 50 Ida. 762, 790, 300 Pac. 898, the court said:

"The evidence was not offered to convict appellant of bigamy, or adultery, but to establish a motive for killing his supposed wife."

So here, there was no attempt to indirectly try the defendants on any liquor charge, nor could the jury have been misled in this particular (*People v. Craig,* 111 Cal. 460, 44 Pac. 186), and since the effect of this evidence was limited to Fox by proper instructions, it was not prejudicial as to the other defendants. (*State v. MacClaren,* 115 Or. 505, 237 Pac. 969; *State v. Dilley,* 44 Wash. 207, 87 Pac. 133; *Skillian v. Commonwealth,* 206 Ky. 586, 268 S. W. 299; *Steele v.*

*State,* 87 Tex. Cr. 588, 223 S. W. 473.) In *People v. Trotter,* 120 Cal. App. 54, 7 Pac. (2d) 731, at 734, the court said:

"Both appellants complain of the court's ruling in admitting in evidence statements made by one defendant after the commission of the crime and not in the presence of the other defendants. The record shows that the trial court was extremely careful in instructing the jury on each occasion that the statement of one defendant not made in the presence of another could be considered only against the defendant making it and not against any absent defendant. The district attorney also repeatedly stipulated that such was the law, and requested the court to so instruct the jury. This brings the case within the rule announced in *People v. Burdg,* 95 Cal. App. 259, 272 Pac. 816, 820, as follows: 'It is true, the prosecution was allowed to introduce in evidence at the joint trial extrajudicial declarations made by the respective appellants out of the presence of the other, but this situation of itself does not give defendants jointly charged the absolute right to separate trials, because if such were the rule then in no case could there be joint trial when part of the evidence against the joint defendants consisted of extrajudicial statements; furthermore, in the present case, the record discloses that in admitting said declarations the trial court in each instance carefully and properly instructed the jury to the effect that the rights of the absent party were to be in no way affected thereby; and we must presume, in the absence of a contrary showing, that the jury followed those instructions. *People v. Prather,* 134 Cal. 436, 66 Pac. 589, 863.''

The fourth assignment is that the court improperly overruled appellants' objection to the question asked of McGee as follows: "Why didn't you ask to get out of the car?" In explanation of this question and the objection, the context shows that defendants took the attitude that McGee had voluntarily entered their car and gone with them and returned, as showing that they were entirely innocent of any intent to commit an assault upon anyone,

and that they were not, but that the Clarks and Huff were, the aggressors. The information sought by this question was directly responsive by way of explanation upon re-direct examination, of the question previously asked by the defendants and the answer as follows:

"Q. At no time after you got in the car (defendants') did you ask to get out, did you? A. No sir.

"Q. Or make any effort to get out? A. No, sir."

If the defense wanted to show that McGee of his own volition got in and stayed in the car, it was proper for the state to show the contrary. A witness may be interrogated upon redirect examination as to any inferences shown by cross-examination, giving explanations, reasons and motives surrounding or connected with the doing or omitting to do a particular thing. (*King v. Hahn*, 40 Ida. 555, 234 Pac. 937; *Smith v. Mine & Smelter Supp. Co.*, 32 Utah, 21, 88 Pac. 683, at 684; *Commonwealth v. Hughes*, 183 Mass. 221, 66 N. E. 716, at 718; *State v. Wong Wen Teung*, 99 Or. 95, 195 Pac. 349, at 351; *People v. Klopfer*, 61 Cal. App. 291, 214 Pac. 878; *Ellis v. Mansfield*, 315 Mo. App. 292, 256 S. W. 165; *Goldberg v. United States*, (C. C. A.) 295 Fed. 447; *Clark v. United States*, (C. C. A.) 265 Fed. 104; *Davis v. State*, 25 Ga. App. 532, 103 S. E. 819; *State v. Kendall*, 200 Iowa, 483, 203 N. W. 806; *Davis v. Allen*, 199 Ky. 442, 251 S. W. 194; *Mahoney v. Gootch*, 246 Mass. 567, 141 N. E. 605; *State v. McCormack*, 93 N. J. L. 287, 107 Atl. 475; *State v. Hempke*, 121 Wash. 226, 209 Pac. 10.)

Under assignments Nos. 10 and 11, the appellants challenge the introduction of evidence as to a previous threat made by Fox against Lee Clark, brother of the slain man. The threat did not specify Lee Clark, and while perhaps the inference from the entire record is that the defendant Fox was primarily directing the threat against Lee Clark, the relationship of the brothers and the association between Clark and Huff as undercover men in liquor prohibition work, and all of the facts and circumstances surrounding not only the threat, the manner in which it was made, but the ostensible cause thereof and the later action of the de-

fendant rendered it not inadmissible. (*State v. Buster*, 28 Ida. 110, at 118, 152 Pac. 196; *State v. Rogers*, 30 Ida. 259, 163 Pac. 912.) The situation as to the threat except as to the time intervening between the making of the threat and the slaying of the deceased is similar to that considered in *State v. Larkins*, 5 Ida. 200, 47 Pac. 945, and the elapsed time while bearing upon its weight is a matter to be considered by the jury and does not affect its admissibility. (*People v. Riggins*, 159 Cal. 113, 112 Pac. 862.)

Testimony had already been introduced that Fox on the fatal evening had asked where Lee Clark was, and the circumstance that Lee Clark and Gerald Clark were together would have its bearing in justification of the admission of the previous threat as against Lee Clark only, as showing the attitude of appellant Fox toward the Clarks, when he met them together. Since the jury by their verdict, and as we have indicated, they were justified in so doing, concluded that Fox participated either as an accomplice or in furtherance of a conspiracy in the killing of the slain Clark, where both Clarks, except for the different positions in which they stood, might have been fatally injured, we may conclude that the circumstances are sufficient to reasonably connect the threat with the occasion of the assault and render its admission not erroneous. (*People v. Wilt*, 173 Cal. 477, 160 Pac. 561; *Martin v. State*, 96 Tex. Cr. 575, 259 S. W. 572; *Roberson v. State*, 218 Ala. 442, 118 So. 654.)

Assignments Nos. 12, 13, 14, 15 and 16 had to do with questions asked by the special prosecutor, his attitude toward the witnesses, and evident attempts, through the questions, to offset the impression which defendants' counsel were endeavoring to make in their examination. Comparing the methods employed by respective counsel, it is apparent it was no more than an endeavor on the part of the state to forcibly present its side of the controversy, and there was no abuse of discretion shown by the court in not ruling with appellants as requested. (*State v. McClurg*, 50 Ida. 762, 300 Pac. 898.) The intent of the parties and the deductions to be drawn from the detailed circumstances were the principal matters in dispute, and each side was legiti-

mately endeavoring to drive home their contentions. (*People v. Ah Wing*, 35 Cal. App. 218, 169 Pac. 402.)

The error under assignment No. 15, if error, was harmless.
 Assignment No. 17 challenges instruction No. 14:

"Wherever in these instructions the word 'defendant' is used in the singular, without indication as to which of the defendants is referred to, you will apply the term, and the instruction in which it is used, to each one of the defendants as you consider the case against each, respectively."

Assignment No. 27 may also be considered in connection with this assignment, the latter assignment challenging instruction No. 44. These assignments are based upon the contention that the court did not sufficiently advise the jury as to what evidence they might consider against the particular defendant concerning whom it was introduced; however, instruction No. 44:

"The court instructs the jury that, when arriving at your verdict in this case, you may consider all the facts and circumstances in evidence before you, but you cannot consider, as evidence against either one of the defendants, the statements of the other made out of his presence and hearing; if any such statements were made; but you may consider, as evidence against either of the defendants, any statement made by himself, if any such statement was made.

"In this case certain testimony was received concerning the making of an affidavit for a search warrant for a search of the home of the defendant Fox, by the witness Lee Clark; and the affidavit, complaint and search warrant were received in evidence as Plaintiff's Exhibits 'A,' 'B' and 'C.' This evidence was offered and received only as against the defendant Fox; and you must not consider such evidence, nor allow it to affect you in your deliberations on the case as against either of the defendants, Fuller or McCarroll."

limited the application of the testimony to the defendant against whom it was introduced.

Appellants' requested instructions A to I in many particulars commented upon the weight of the evidence, and

in others were not sufficiently specific to demand their giving. The court had already, as noted above, admonished the jury when the evidence was first introduced to consider it only against the defendant concerned; not against all of them. Instruction No. 44 again so advised the jury. We do not think the jury could possibly have been misled by instruction No. 14. (*State v. Wilson*, 51 Ida. 659, 9 Pac. (2d) 497; *State v. Farnsworth*, 51 Ida. 768, 10 Pac. (2d) 295.)

Assignment No. 18 challenges instruction No. 17 as given:

"The court charges the jury that, to make out a case of justifiable self-defense, the evidence must show that the difficulty was not provoked or encouraged by defendant, that he was or appeared to be so menaced at the time as to create reasonable apprehension of danger to his life or of grievous bodily harm, and that there was no other reasonable hope of escape from such present impending peril."

The first part of the instruction closely follows requested instruction No. 20, and as to the other features must be read in connection with instructions Nos. 18 and 19, which properly state the law.

The court instructed the jury in No. 58 to consider all of the instructions together, and No. 19 as given, follows requested instruction No. 24. The only part of the instruction No. 17 as given, about which there is any real contention, is the clause stating: "that there was no other reasonable hope of escape from such present impending peril," it being urged that it told the jury that it was incumbent upon the defendants to attempt to escape before they could avail themselves of a plea of self-defense. It will be noticed that this phrase does not say *"no other hope of escape,"* but "no other *reasonable* hope of escape," etc.

Appellants' requested instruction No. 26 was as follows: "The court further instructs you that although the jury may believe from the evidence, beyond a reasonable doubt, that the defendant, McCarroll shot and killed Gerald Clark,

if they believe from the evidence, that when he did so, he had reasonable ground to believe and did believe that the deceased, Gerald Clark, òr others in his party acting in concord with him, were about to inflict upon the defendants Fox and Fuller and McCarroll or any of them, death or great bodily harm, or it reasonably appeared to defendant, McCarroll that the only reasonably safe means of protecting himself, or either of them, against such danger, real or apparent, was to shoot the said Gerald Clark or others in his party acting in concord with him, and the shooting and killing of Gerald Clark was done under these circumstances, the same was excusable on the grounds of apparent necessity in the defense of himself or associates named, and the jury should acquit the said defendants, and each of them," and there is no real difference between the phrase in No. 26: "the only reasonable safe means of protecting himself or either of them against such danger real or apparent," and "no reasonable hope of escape from such impending peril." While we do not approve of the word "escape," it was apparent that it was used in the sense of avoid; not of flight. Self-defense is only a justifiable excuse for homicide when reasonable. (*State v. McGreevey,* 17 Ida. 453, 467, 105 Pac. 1047; *State v. Fleming,* 17 Ida. 471, 485, 106 Pac. 305; *State v. Bush,* 50 Ida. 166, at 178, 295 Pac. 432.) This instruction did not advise the jury that defendants must have done all within their power to avoid the difficulty; only a reasonable attempt, which is sufficient. (*State v. Dunlap,* 40 Ida. 630, 636, 235 Pac. 432.)

Instruction No. 17, when read in connection with Nos. 18, 19 and 21, properly stated the law, and it is obvious that not all the law can be given in one instruction.

Instruction No. 18 challenged in assignment No. 19 was given and approved in *State v. Lyons,* 7 Ida. 530, 64 Pac. 236.

Assignments Nos. 20 to 26 challenge instructions Nos. 28 to 34, which define conspiracy, and the distinction between accessories and principals; thus they were not

mingled as they were in *State v. Wolf,* 112 Iowa, 458, 84 N. W. 536, 538, cited by appellants.

All of these matters need not be included in one instruction, and being separated, clearly and properly advised the jury in the premises (*Spies v. People,* 112 Ill. 1, 3 Am. St. 320, at 455, 17 N. E. 898), and although the charge was that of murder, it was not improper to instruct the jury with regard to conspiracy. (*Spies v. People, supra,* 3 Am. St., at 340; *State v. Corcoran,* 7 Ida. 220, at 241, 61 Pac. 1034; *People v. Creeks,* 170 Cal. 368, 149 Pac. 821; *State v. Chong Ben,* 89 Or. 313, 173 Pac. 258.)

Appellants contend that there was no evidence of a conspiracy. Without reiterating the evidence as sketched above, there was sufficient from which to conclude that at least as between Fox and McCarroll there was an understanding of the reason for their trip to Newdale and their purposes and intentions in going and the manner in which they intended to deal with any situation that might arise, which justified the giving of the instruction from the standpoint of the evidence. (30 C. J. 164, 395; *People v. Brock,* 87 Cal. App. 601, 262 Pac. 369; *Poeple v. Seitz,* 100 Cal. App. 113, 279 Pac. 1070; *People v. Lawrence,* 143 Cal. 148, 76 Pac. 893, 68 L. R. A. 193; *People v. Revley,* 67 Cal. App. 553, 227 Pac. 957; *People v. Lalor,* 95 Cal. App. 242, 272 Pac. 794; *People v. Shurtleff,* 113 Cal. App. 739, 299 Pac. 92.)

Instruction No. 34 in this series on conspiracy is clearly supported by C. S., sec. 8845, and C. S., sec. 8093. (*State v. Farnsworth, supra.*)

We have heretofore commented on instruction No. 44, *supra,* challenged in assignment No. 27. This instruction, when considered in connection with the admonition given when the evidence was introduced, was sufficient. (*State v. Wilson, supra; State v. Farnsworth, supra.*) In this particular, the requested instructions were not such explicit written requests as to make their refusal error. (*State v. Jurko,* 42 Ida. 319, 245 Pac. 685; *State v. Smailes,* 51 Ida. 321, 5 Pac. (2d) 540.)

Assignments Nos. 28 and 29 challenge the giving of instruction No. 50 and the refusal of requested instruction No. 3.

Instruction No. 50 as given, was as follows:

"You are instructed that circumstantial evidence in criminal cases is competent and legal evidence, and is the proof of such facts or circumstances, connected with or surrounding the commission of the crime, as tends to show the guilt or innocence of the party charged."

Requested instruction No. 35 was adequately covered in instructions Nos. 50 and 35. (*Cunningham v. State*, 56 Neb. 691, 77 N. W. 60; *Law v. State*, 33 Tex. 37.) Assignments Nos. 28 and 29 may be considered in connection with assignment No. 42, covering requested instruction No. 35, which was erroneous because it stated that when circumstantial evidence *alone* was considered, certain rules would be the law. The state did not depend upon circumstantial evidence *alone*, and as to the immediate shooting, the evidence was direct, and not circumstantial. In fact, it is doubtful if there was any circumstantial evidence as such, introduced before the jury. Deductions are always made from any evidence, but this does not necessarily make the evidence constituting the groundwork for such deductions circumstantial.

Requested instruction No. 3 was covered by instructions Nos. 40, 42 and 51. (*State v. Farnsworth, supra; State v. Pasta*, 44 Ida. 671, 258 Pac. 1075; *State v. Nolan*, 31 Ida. 71, 169 Pac. 295; *State v. Jurko*, 42 Ida. 319, 245 Pac. 685; *State v. George*, 44 Ida. 173, 258 Pac. 551.)

Under assignment No. 30 appellants urge that requested instruction No. 5 should have been given:

"Your personal opinion as to facts not proved cannot properly be considered as the basis of your verdict. You may believe as men that certain facts exist but as jurors you can only act upon evidence introduced upon the trial, and from that, and that alone, you must form your verdict, unaided, unassisted, and uninfluenced by any opinion or presumption not founded upon the testimony."

This was covered by instruction No. 41:

"You are instructed, as a matter of law, that the doubt which a juror is allowed to retain in his own mind, and under the influence of which he should frame a verdict of not guilty, must always be a reasonable doubt. A doubt produced by undue sensibility in the mind of a juror, in view of the consequences of the verdict, is not a reasonable doubt, and the juror is not allowed to create sources or materials of doubt by remote conjectures as to possible status of the case different from those established by evidence. You are not at liberty to disbelieve as jurors if from the evidence you believe as men. Your oath imposes upon you no obligation to doubt when no doubt would exist if no oath had been administered; and in considering the case the jury are not to go beyond the evidence to hunt up doubts, nor must they entertain such doubts as are merely chimerical or conjectural. A doubt, to justify an acquittal, must be reasonable, and it must arise from a candid and impartial investigation of all the evidence in the case; and unless it is such that were the same kind of doubt interposed in the graver transactions of life it would cause a reasonable and prudent man to hesitate and pause, it would not be sufficient to authorize a verdict of not guilty. If, after considering all the evidence, you can say that you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt."

Hence there was no error. (*State v. Weston,* 109 Or. 19, 219 Pac. 180; *People v. Zajicek,* 233 Ill. 198, 84 N. E. 249; *Reed v. State,* 66 Neb. 184, 92 N. W. 321; *Perry v. People,* 38 Colo. 23, 87 Pac. 796; *People v. Worden,* 113 Cal. 569, 45 Pac. 844.)

Requested instruction No. 11, noted under assignment No. 31, was sufficiently covered by the last paragraph of instruction No. 40:

"To warrant you in convicting the defendant, the evidence must, to your minds, exclude every reasonable hypothesis other than that of the guilt of the defendant. That is to say, if after an entire consideration and comparison of all the testimony in the case, you can reasonably ex-

plain the facts given in evidence on any reasonable ground other than the guilt of the defendant, you should acquit him." (*State v. McClurg, supra.*)

The court merely modified requested instruction No. 15 in his instruction No. 37, removing therefrom any comment on the evidence, otherwise giving the gist thereof.

Requested instruction No. 16 was a negative statement. The direct statement of the same rule of law was given in instructions Nos. 36 and 39.

It is apparent that appellants' requested instruction No. 18: "The court instructs you gentlemen of the jury, that although the defendants Fox and Fuller and McCarroll stand jointly informed against, that neither is chargeable with anything which any other one named in the information may have done unless he advised, aided or abetted the others, or one of the others in the commission of the offense, intending at the time, by his word or act to aid or encourage the commission of the offense," was given by instructions Nos. 27 and 33:

Instruction No. 27: "You are further instructed that by statute in this state, the distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, shall be prosecuted, tried and punished as principals; and no other facts need be alleged in any information against such an accessory than are required in an information against a principal.

"Therefore, if you find from the evidence in this case, beyond a reasonable doubt, that the defendant, J. L. McCarroll feloniously, wilfully, deliberately, premeditatedly and with malice aforethought, shot, and by such shooting, killed Gerald Clark at the time and place alleged in the information, and that the defendants William Fox and Frank Fuller were then and there present, knowing of the unlawful intent of the said McCarroll, or were near, and there present for the purpose of giving aid to the said McCarroll, if

needed, feloniously, wilfully, deliberately, premeditatedly and of their malice aforethought, aiding and abetting, advising, counselling or assisting the said McCarroll in such shooting and killing, then the defendants William Fox and Frank Fuller are, within the meaning of the law, as guilty as if they had fired the fatal shot themselves. Or, if you should find that only one of such last named two defendants, Fuller and Fox, was thus present, and thus aiding and abetting the said McCarroll, then only that one would be guilty as a principal under the law.''

Instruction No. 33: ''The burden is on the prosecution to prove beyond a reasonable doubt, that a combination and conspiracy was formed, that is to say, that the defendants, William Fox, J. L. McCarroll and Frank Fuller, or at least two of them conspired and agreed to assault with a deadly weapon and intimidate G. E. McGee, Lee Clark and Del Ray Huff, or their pals, and to assault with a deadly weapon and intimidate or bribe Lee Clark and Del Ray Huff, or either of them by the payment of money or by threats of violence, and that in the execution or carrying out of such conspiracy and design, some one of the party to the said conspiracy and agreement, shot and killed Gerald Clark. The burden of establishing these facts is on the prosecution throughout and never shifts to the defendants, and therefore, if the prosecution has failed to prove beyond a reasonable doubt, each and every one of these facts, you should acquit the defendants, unless you should find from the evidence, beyond a reasonable doubt, that such defendant or defendants did aid and abet, or encourage and assist, as defined by the court in its instructions, the one who actually fired the shot or shots that inflicted the wound that killed Gerald Clark,''

and requested instruction No. 22 was covered by instructions Nos. 18 and 19.

Requested instruction No. 28 is taken in part from C. S., secs. 8038 and 8039. These statutes are rules as to the admissibility of evidence, not for the guidance of the jury in reconciling such evidence. The appellants cite no

authority for the proposition that these statutes should have been carried into the instructions.

Instruction No. 48:

"The court instructs the jury that you are the exclusive judges of the credibility of the witnesses, and it is your duty to reconcile any seeming conflict that may appear in the testimony as far as may be in your power upon the theory that each witness has sworn to the truth. When this cannot be done, you may consider the conduct of the witnesses upon the witness stand; the nature of the testimony given by them; to what extent, if any, they are corroborated or contradicted by other testimony, their interest, if any, in the cause; their relation to the parties; and such other facts appearing in the evidence as will, in your judgment, aid you in determining whom you will or will not believe. You may also, in considering whom you will or will not believe, take into account your experience and relations among men.

"If you believe that a witness, or any number of witnesses, have wilfully and knowingly testified falsely in regard to any material matter, you may disregard such witnesses' testimony, except in so far as it is corroborated by other credible evidence, or by facts or circumstances appearing in the case,"

sufficiently advised the jury as to how they should weigh the testimony.

In requested instruction No. 30 the appellants sought to have the court tell the jury that the absence of evidence of motive afforded a substantial presumption of innocence. A similar instruction was held improper in *State v. McLennan*, 40 Ida. 286, 231 Pac. 718. The thought of this instruction was given by the court in No. 46, and while erroneous as too favorable to appellants, was the contrary of prejudicial, which observation also disposes of assignment No. 41, based upon the court's refusal to give requested instruction No. 34, which was not correct.

Requested instruction No. 31: "The jury is instructed that the constitution of the United States and the constitution of the state of Idaho gives the right to every

man to bear arms, and that the law gave the defendant the right to carry arms,'' was not in harmony with C. S., sec. 8407, and was, as to the last clause, clearly a comment on the evidence and vitiated the entire request. Hence, there was no error in its refusal. (*State v. Boykin*, 40 Ida. 536, 234 Pac. 157; *State v. Farnsworth, supra*.)

Requested instruction No. 32 was substantially covered by instruction No. 48.

There was no evidence that Fox, as distinguished from the other defendants, was retreating, to afford a basis for the giving of requested instruction No. 33.

Under assignment No. 42 the contention that the court erred in refusing requested instruction No. 35 has already been considered in assignments Nos. 28 and 29.

Requested instruction No. 37 urged in assignment No. 43 infringed upon the rights of the jury in commenting on the weight to be attached to certain evidence, and was properly refused.

Assignments Nos. 44 and 45 challenge the sufficiency of the evidence and have been disposed of by the discussion above.

Assignment No. 46 criticises the court's action in refusing a new trial on various grounds: first, (a) (b), that the jury were not kept together prior to the time they were impaneled. The affidavits of appellants' counsel show they knew of this situation, but no objection was interposed thereto, nor any request made that they be kept together, and such criticism is now too late. Defendants and their counsel may not stand by without objection to a course of action pursued by the trial court; take their chances on the outcome of the trial, and if it be unfavorable, condemn that which in effect they acquiesced in, and sanctioned by silence. (*State v. McClurg, supra; State v. Baker*, 28 Ida. 727, 738, 156 Pac. 103; *State v. Chacon*, 36 Ida. 148, 154, 209 Pac. 889.) (c) That one of the jurors was related to Gerald Clark, the deceased, within the fourth degree, a violation of C. S., sec. 8930. As shown by his affidavit, this relationship was not known to the juror until after the trial, hence even

though he were within the degree of relationship prohibited by the statute, which we do not pass upon, there was no error in his serving as a juror. (*Miller v. Commonwealth,* 203 Ky. 437, 262 S. W. 579; *State v. Stewart,* 296 Mo. 12, 246 S. W. 936; *Brumfield v. State,* 102 Miss. 610, 59 So. 849, 921; *People v. Boren,* 139 Cal. 210, 72 Pac. 899; *Templeton v. State,* (Tex. Cr.) 57 S. W. 831; *State v. Worthington,* 109 W. Va. 449, 155 S. E. 313; (d) That the court failed to instruct with regard to defendant Fox not testifying in his own behalf. No written request is in the record, nor does it appear that any written request was made. When counsel for the defendants called it to the court's attention the court stated that he understood the giving of this instruction, referring to the request of the defendants, would be improper. We do not know what the request was, and we must presume that the court was correct. (*State v. Harness,* 10 Ida. 18, 76 Pac. 788; C. S., sec. 8972; 16 C. J. 1070); (e) Newly discovered evidence: Under this head appellants offered an affidavit showing that blood and a gun were found in the car in which deceased was taken to the hospital at Rexburg after the shooting. The state produced evidence showing that there was no gun in the car. No abuse of discretion is shown by the court in refusing to grant a new trial on this question. The same is true with regard to the testimony of Schwendiman. This witness was examined at length at the trial of the case and all that is sought from him on a new trial was known to him at the time of the trial, and the court may well have concluded that it was not newly discovered evidence.

 The appellants have not pointed out how the testimony they seek in the new trial by the witness Rigby was in any way pertinent or relevant, and any difficulty or physical encounter that he may have had with the deceased Clark where this difficulty was not known to the appellants could have no bearing herein. (*State v. Wilson,* 41 Ida. 616, 631, 243 Pac. 359.)

 C. W. Sandles, of counsel for the appellants, in an affidavit for a new trial, sets forth as newly discovered evi-

dence certain activities on the part of Fox on April 14, 1931, negativing the making of the threat above referred to. Sandles was of counsel, and of course knew all about this before the trial. The affidavits of the parties show that what was known to McCarroll was known to Sandles. This was not newly discovered evidence in any sense of the word, and would not justify the granting of a new trial. (*Hall v. Jensen,* 14 Ida. 165, 93 Pac. 962.)

In the first instance, the granting or refusal of a new trial is in the sound discretion of the trial court who has all the facts and circumstances before him, and has seen and heard the witnesses, and there is no abuse of discretion shown herein. (*State v. Fleming,* 17 Ida. 471, 106 Pac. 305; *State v. Askew,* 32 Ida. 456, 184 Pac. 473; *State v. Black,* 36 Ida. 27, 208 Pac. 851; *State v. Hoagland,* 39 Ida. 405, 228 Pac. 314; *State v. Morrison, ante,* p. 99, 11 Pac. (2d) 619; *People v. Dabney,* 315 Ill. 320, 146 N. E. 166.)

No reversible error appearing in the record, and the evidence being sufficient to sustain the verdict, the judgment and order are affirmed.

Lee, C. J., and Budge, Varian and Leeper, JJ., concur.